## PITTSBURGH, FORT WAYNE AND CHICAGO RAILWAY CO.

*v.*

## MICHAEL CALLAGHAN.

*Filed at Ottawa October 11, 1895.*

1. TRIAL—*taking case from the jury—what proof sufficient to prevent.* Proof that a locomotive causing an injury on a track used by different companies was lettered with defendant's name, establishes, *prima facie*, possession and ownership by the defendant, and is sufficient, on that question, to justify the trial court in refusing to take the case from the jury.

2. SAME—*taking case from jury for negligence of plaintiff.* The fact that a plaintiff, who worked in a packing house, received the injury sued for while crossing railroad switch-tracks on a level, by a passageway commonly used by the men, when, by going half a block and using two flights of stairs, he could have crossed by a viaduct over the tracks, is not *per se* such want of care that the trial court should have directed a verdict for defendant.

3. PRESUMPTION—*what will not rebut presumption arising from name of company on engine.* An instruction that if the engine causing an injury was marked with the name of the defendant company and also with the words "Chicago Switching Association," then there was no presumption of law or fact as to which corporation or association had its management, is properly refused, as invading the province of the jury, particularly where the evidence shows the lettering was "Railway Switching Association" instead of "Chicago Switching Association."

*P., Ft. W. & C. Ry. Co.* v. *Callaghan,* 50 Ill. App. 676, affirmed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

This was an action on the case for personal injuries, brought by defendant in error, against plaintiff in error, in the circuit court of Cook county. The declaration contains two counts, the first charging negligence in the management and operation of a certain engine under the control of defendant below, whereby certain cars were propelled against certain other cars and driven against plaintiff below, while, in the exercise of ordinary care,

he was crossing the track of defendant, whereby he was injured.  The second count is similar to the first, except that it charges that it was the duty of defendant to place a brakeman on the hindmost car.  To this declaration the general issue was pleaded.

The plaintiff below was, at the time of the injury, a carpenter in the employ of Nelson Morris & Co.  The packing house of Morris & Co. stands on the north-west corner of the intersection of Forty-third street, running east and west, and Loomis street, at right angles.  The south-east corner of the packing house is curved, to conform with railroad tracks turning from Loomis street west into Forty-third street.  West of Loomis street and opposite the packing house were a large carpenter shop and various structures belonging to Morris & Co. and others.  At the time of the injury certain railroad tracks ran north and south on Loomis street, used for the purpose of reaching these industries.  Near Forty-third street there branched west from Loomis street a track, which, when fully curved into Forty-third street, was divided by switches into several tracks, known as "Swift's track," "Nels Morris' track" and "Team track."  On both the north and south sides of Forty-third street, westward, were located several manufacturing establishments employing a large number of men, and this strip of ground occupied by tracks was used by them as a common passageway in passing between these various buildings.  As a means of passage, also, between the buildings of the Nelson Morris & Co. plant, one or more bridges or viaducts were constructed over these tracks, but were not exclusively used, most of the employees and other persons having occasion to pass back and forth being in the habit of crossing on a level with the tracks, and passing around or between cars when necessary.  An average of about fifteen hundred employees and other persons each day crossed these tracks in the course of their business.  The mode of conducting the switching of cars at these tracks

was as follows: The railroad cars were taken to and from Morris & Co.'s plant by means of locomotive engines, and the switching necessary to be done for the plant was done by the same means and on the tracks above described. Such switching was of daily occurrence, and was done in a manner usual and customary to that locality. For example, if there were cars on the platform track which were to be taken off and away, and such cars were mixed with other cars on the same track, then the locomotive was attached to the easterly end of the line, and the track, in switchman's parlance, was "pulled," and the cars thrown alternately down upon one or the other of the tracks, as was necessary to select those desired. The engine did not keep hold of the cars until brought to a standstill, nor did the switchman ride or follow them to the point of stoppage, but they were given a reasonable momentum and cut off and allowed to run themselves. In that way concussion between standing and moving cars took place with varying degrees of force, and at points so far away from the engine as that its bell might or might not be heard. This mode of switching had been followed at the Nelson Morris & Co. plant, and on those tracks, during the year and a half that the plaintiff below had been employed there next before the accident, and his testimony shows he understood it perfectly well. The supplies for the carpenter shop were kept in the packing house, and on October 26, 1889, defendant in error, being in need of nails, started to cross over to get them. He did not go over the bridge or viaduct, which necessitated the climbing of stairs, but attempted to cross the tracks. Two box cars were standing on the south track, with no engine attached. As defendant in error attempted to cross over near the west end of these, a flying switch was made, and two other cars were thrown in on this track against the stationary cars, moving them about two car lengths. Defendant in error was about opposite the bumper of the west stationary car when

they were struck, and he was knocked down and badly injured.

A jury in the circuit court gave plaintiff a verdict for $13,000.   By order of that court a *remittitur* of $3000 was entered, whereupon the court rendered judgment on the verdict for $10,000, after overruling a motion for new trial.   An appeal was taken to the Appellate Court for the first district, where the judgment was affirmed.   From that judgment this writ of error is prosecuted.

George Willard, and William E. Mason, for plaintiff in error:

The law is well settled that in cases of this kind the plaintiff must allege and prove that he was at the time in the exercise of due care.   *Railroad Co.* v. *Nowicki,* 148 Ill. 29 ; *Hawk* v. *Railroad Co.* 147 id. 399 ; *Railway Co.* v. *Louis,* 138 id. 9; *Blanchard* v. *Railroad Co.* 126 id. 416; *Railroad Co.* v. *Fietsam,* 123 id. 518 ; *Abend* v. *Railroad Co.* 111 id. 202; *Railroad Co.* v. *Gregory,* 58 id. 272.

Plaintiff below himself assumed the risk of crossing the tracks on a level therewith and in close proximity to the cars.   It is settled law that in such case there can be no recovery, in the absence of willful injury.   *Coal Co.* v. *Haenni,* 146 Ill. 614; *Brick Co.* v. *Sobkowiak,* 148 id. 573; *Stafford* v. *Railroad Co.* 114 id. 244; *Milling Co.* v. *Spehr,* 145 id. 329.

Duncan & Gilbert, for defendant in error.

Mr. Justice Phillips delivered the opinion of the court:

The principal error assigned on this record is in the refusal of the trial court to give to the jury certain instructions asked by plaintiff in error.   At the close of the evidence of the plaintiff in the trial below, the defendant below moved the court to instruct the jury to find for defendant, which motion was renewed at the close of the argument, and by the court denied.   A consideration of the refusal of the trial court to give this instruction

involves two questions raised: First, was plaintiff in error responsible for the injury received; and second, did the negligence of defendant in error contribute to the injury to such an extent as to bar a recovery.

The question as to whether or. not the engine which propelled the cars in such a manner as to injure defendant in error belonged to plaintiff in error, was one of fact, and if there was evidence tending to show such fact, then it was not error, so far as this question is concerned, for the court to refuse the general instruction to find for the defendant. *Lake Shore and Michigan Southern Railway Co.* v. *Richards,* 152 Ill. 59.

The evidence shows that at the time of the injury these tracks were operated by the Railway Switching Association, which was not a corporation, but an association of several roads jointly engaged in the operation of such tracks for switching purposes. The former manager of the association, on being asked whether the company of plaintiff in error was a member of the Railway Switching Association, stated that he believed in their articles it was termed the Pennsylvania Company, operating the Fort Wayne. While this evidence was not definite, other proof showed that the engine in question that propelled the cars was a Pittsburgh, Fort Wayne and Chicago engine, No. 39, and that there was also a sign on the side of the cab, "Railway Switching Association." Other evidence in corroboration showed that engine No. 39 of the Pittsburgh, Fort Wayne and Chicago Railway Company was used there in switching on these tracks. No evidence was offered by plaintiff in error to contradict or disprove any of these facts. The lettering of the name of the company of plaintiff in error on the engine was *prima facie* evidence of possession by that company.

In *Bergen* v. *Riggs,* 34 Ill. 170, this court said (p. 173): "As a general proposition, possession of chattels creates a presumption of ownership,—slight, it may be, but sufficient until overcome by proof. Yet the *prima facie*

case may be rebutted by the circumstances attending the possession.   It may be rebutted by evidence, either circumstantial or positive, but until rebutted it is evidence of ownership."

In *Schulte* v. *Holliday*, 54 Mich. 73, the action was for damages caused by the servant of defendant in permitting defendant's horse to run away.   The controversy turned upon the question whether the negligent party was in fact the servant of the defendant.   The court, over the objection of defendant, permitted proof to be made that the name of defendant's firm was on the vehicle, and this was the first point urged as ground of reversal before that court.   In disposing of this point the Supreme Court said:  "The plaintiff shows, against the objection of defendant's counsel of immateriality and irrelevancy, that the name of defendant's firm was upon the wagon which the servant used on the occasion of the injury.   There was no error in this.   It was proper to identify the horse and vehicle used by the defendant at the time."

The undisputed evidence in this case that the engine was lettered with the name of the company of plaintiff in error carrying with it, where unexplained, *prima facie* evidence of possession and ownership, was evidence tending to show the responsibility of plaintiff in error for the injury, and it was not error in the trial court to refuse to take such evidence from the jury.   The jury, both by their special finding and by their general verdict, have found that the engineer or switchman in charge of the locomotive was the employee of plaintiff in error.

It is also urged that the court should have instructed the jury to find for defendant below, on the ground that the plaintiff, by his own negligence, contributed to his injury to such an extent as would bar his recovery against defendant below.   This court said in the case of *Wabash Railway Co.* v. *Brown,* 152 Ill. 484:  "Negligence is ordinarily a question of fact.   Where the evidence on material facts is conflicting, or where, on undisputed facts, fair-

minded men of ordinary intelligence may differ as to the inferences to be drawn, or where, on even a conceded state of facts, a different conclusion would reasonably be reached by different minds, in all such cases negligence is a question of fact. * * * With all the facts considered, if there is a reasonable chance of conclusions differing thereon, then it is a question for a jury."

At the time of the injury complained of in this case, defendant in error, in the ordinary course of his employment, was passing from one to the other of his employer's buildings. By going around half a block and ascending two flights of stairs he could have passed over the bridge or viaduct over the tracks. Instead he adopted the route used by about fifteen hundred employees daily, and attempted to cross on a level with the tracks. The track curved at this point, and two cars obstructed his view. Before stepping on the track he stopped and looked in both directions, because he knew switching was constantly going on and that cars never stood on this track except for a minute or two at a time. Without warning cars propelled from the engine struck the standing cars with such momentum as to force them forward two car lengths. This court has defined negligence to be, "the omission to do something which a reasonable man, guided by those ordinary considerations which ordinarily regulate human affairs, would do, or the doing of something which a prudent and reasonable man would not do." *Wolff Manf. Co.* v. *Wilson*, 152 Ill. 9; *Chicago, Burlington and Quincy Railroad Co.* v. *Johnson*, 103 id. 512.

Whether the place of the occurrence of this accident was a street or not is not material to this case. It is not shown to have been private property of plaintiff in error. It appears that for at least three years before the accident it had been used as a passageway and crossing by hundreds of people daily. It was on a curve, where the view of those operating the trains and those seeking to pass over was obstructed. ' Under such circumstances as

this it was the duty of those having control of trains to use care commensurate with the danger. *Wabash, St. Louis and Pacific Railway Co.* v. *Wallace*, 110 Ill. 114; *Peoria, Pekin and Jacksonville Railroad Co.* v. *Siltman,* 88 id. 529; Patterson on Railway Accident Law, sec. 170.

There was sufficient evidence in this record tending to show that the plaintiff below was in the exercise of ordinary care and caution at the time of the injury. It was a question on which fair-minded men of ordinary intelligence might differ, and therefore a question of fact. It was not error, therefore, for the trial court to submit the question to the jury and refuse the instruction directing them to find for defendant below. It is not for this court to pass upon the sufficiency of all the evidence, when considered together, to sustain the plaintiff's declaration and entitle him to recover. A jury has so found, and we have frequently held that where such finding of fact has been approved by the trial and Appellate Courts it is final. *Lake Shore and Michigan Southern Railway Co.* v. *Richards, supra; National Syrup Co.* v. *Carlson*, 155 Ill. 210.

The first and third instructions of plaintiff in error refused by the court, which go to the extent of informing the jury that if the engine was marked with the name of the company of plaintiff in error and also "Chicago Switching Association," then there was no presumption of law or fact as to which corporation or association had its charge and management, were objectionable, in that they invaded the province of the jury on a material fact, and for the reasons heretofore given in this opinion. There was also no evidence tending to show that the engine was marked "Chicago Switching Association," but it was lettered "Railway Switching Association."

All the merit of the fourth instruction refused was fully embraced in the fifth and sixth instructions which were given.

There is no error in this record, and the judgment of the Appellate Court is affirmed.    *Judgment affirmed.*