DETERMINED IN THE

# FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEARS 1907-08.

---

## Chicago Junction Railway Company v. Louis Reinhardt.

### Gen. No. 13,659.

1. PERSONAL INJURIES—*who not mere licensee.* A person using a highway which the owner, for a great number of years, has permitted the public to use as a public highway, is not a mere licensee to which the owner of such highway owes no other duty than to refrain from purposely or wilfully injuring him.

2. RAILROADS—*when owner of tracks liable for negligence of lessee company.* The owner of tracks is liable for the negligence of a railroad company whom it has permitted to use such tracks.

3. ORDINANCE—*validity of, requiring ringing of bell.* An ordinance is valid which requires the ringing of a bell within the limits of a city.

4. CONTRIBUTORY NEGLIGENCE—*when person driving upon railroad tracks guilty of.* Held, that the plaintiff in driving upon the railroad tracks in question in this case, under the circumstances shown by the evidence, and with his knowledge of the tracks and of the fact that a train was liable to come on one of such tracks from either direction at any time, was guilty of such contributory negligence as barred his right to recover for the injury sustained.

BAKER, P. J., dissenting.

53

Action in case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. Albert C. Barnes, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1907. Reversed. Opinion filed February 14, 1908.

**Statement by the Court.** This is an appeal by the defendant from a judgment for $12,000 recovered in an action on the case for personal injuries.

The Union Stock Yards & Transit Company is, and has been since 1866, the owner of the east half of the section bounded by Thirty-ninth street on the north, Halsted street on the east, Forty-seventh street on the south and Ashland avenue on the west, in the city of Chicago. Through this tract no public street has ever been dedicated or laid out. More than forty years before the accident, the Stock Yards Company opened and since has maintained midway between Thirty-ninth and Forty-seventh streets a road or way known as Exchange avenue, from Halsted street to the west line of the half section. At a point some distance west of Halsted street said company erected, when Exchange avenue was opened, and since has maintained across said avenue, a gate under the control of a gateman. Pedestrians were permitted to pass through said gate and along said Exchange avenue at any hour of the day or night; in daytime vehicles, with certain exceptions, were permitted to pass; between six P. M. and six A. M. police patrol wagons, mail wagons and fire department wagons and apparatus were permitted to pass, but other vehicles were not permitted to pass without special permission.

The Stock Yards Company put down and own six railway tracks crossing Exchange avenue, the west track near the west line of the half section and the other five tracks east of said track with the usual distance between tracks. These tracks were in the possession of defendant, under a lease from the Stock Yards Company, and the Baltimore and Ohio Railroad Company ran certain trains over said tracks, under an arrangement with defendant.

Plaintiff was the driver of a city police patrol wagon.

About 8 o'clock in the evening his wagon was called to take an injured man to his home, and in the discharge of his duty plaintiff drove west in Exchange avenue from Halsted street, intending to cross said railroad tracks. When the wagon reached the first through track from the east, it was struck by a Baltimore and Ohio engine going north, and in the collision one of plaintiff's legs was so injured that amputation was necessary.

The cause was submitted to the jury upon the first and fifth counts of the declaration and the plea of not guilty. The first count set up the facts above stated as to the leasing and operation of said railroad tracks, averred that there was in force an ordinance of the city of Chicago requiring the ringing of the bell of the engine at all streets and public crossings in the city, and another ordinance that provided that the bell of each locomotive engine should be rung continuously while running in that part of said city where the accident occurred; that the said Baltimore and Ohio Railroad Company, in operating its engine in approaching and crossing said Exchange avenue, negligently, etc., failed to ring its bell, whereby plaintiff, while exercising ordinary care in driving over said tracks, was injured, etc.

The fifth count contained many of the allegations of the first count, but counted upon the breach of said company of the common law duty to operate its trains with due care, and alleged that said company so negligently, etc., ran its engine toward and across said highway that as a direct result of its negligence plaintiff, while exercising due care for his own safety, was struck and injured.

WINSTON, PAYNE, STRAWN & SHAW, for appellant; SILAS H. STRAWN and JOHN D. BLACK, of counsel.

JAMES C. McSHANE, for appellee.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

We think that the plaintiff was not a mere licensee to whom defendant owed no duty except to refrain from purposely or wantonly injuring him. The Stock Yards Company had permitted the public for forty years to use Exchange avenue as a public highway with certain restrictions which did not include or affect the use plaintiff was making of that avenue when he was injured. It constructed and for many years operated a railroad which crossed that avenue. Great numbers of pedestrians passed along said avenue over said tracks at all hours of the day and night, and certain classes of vehicles, including police patrol wagons, were permitted to pass along said avenue and over said tracks at any hour of the night. We think that the Stock Yards Company when it, at the same time, permitted the public to use Exchange avenue as a public highway and ran engines and trains upon its railroad tracks across said avenue, was bound to use reasonable care in the operation of its engines and trains in approaching and crossing over said avenue, to avoid injuring persons who were passing along said avenue over said tracks. When it leased its railroad to defendant the same duty rested upon defendant. Defendant permitted the Baltimore and Ohio Railroad Company to run trains over said railroad, and its liability in this case is the same as it would be if the engine that struck plaintiff's wagon had been run by its own servants.

The ordinances set up in the first count of the declaration and proved on the trial are as follows: "The bell of each locomotive engine shall be rung continuously while running within said city except" (in certain territory not including the crossing in question).

"Every engineer, fireman or employee of any person, firm, company or corporation owning or operating a railroad within the limits of the city of Chicago, in charge of any engine, shall be required to ring the bell of the engine at all streets and public crossings within the corporate limits of the city of Chicago."

That the ordinance requiring the ringing of a bell on an

engine running within the limits of the city is valid was decided in I. C. R. R. Co. v. Gilbert, 157 Ill., 354, where it was said, p. 367, that a compliance with such ordinance, "would tend to give notice of the approach of an engine on the track, and notice of its approach would tend to the protection of persons on or crossing such track."

In P., C., C. & St. L. Ry. Co. v. Robson, 204 Ill., 254, the question was presented whether an ordinance prohibiting blowing off steam within a certain distance, "of any street or railroad crossing" applied to an engine crossing Laurel street, a road or way in the same half section of land owned by the Stock Yards Company, which street had not been dedicated as a street, but was used by all of the employees of the Stock Yards Company and those who frequented the stock yards on business, and it was said, p. 263: "The ordinance does not use the words 'public street,' but the word 'street' * * *. Although it may have been in a certain sense a private street, the traffic on it was so great that it was necessary to maintain a flagman at the crossing in question. Whether or not it was a public street in such a sense, as to make the ordinance applicable to it, was a question of fact largely for the jury. (Pittsburg, Ft. Wayne & Chicago Ry. Co. v. Callaghan, 157 Ill., 406; Chicago & Alton Ry. Co. v. O'Neil, 172 Ill., 527.) The ordinance was designed for the protection of life and property, and was as necessary at the street in question, whether public or private, as it was at any other street or crossing having the same amount of traffic."

The ordinance first quoted by its terms applied to the engine in question. Whether the other ordinance applied was, under the rule announced in the case last cited, a question for the jury. Upon the question whether the bell on the engine was ringing as the engine approached the crossing, the evidence was conflicting and we cannot say that the finding of the jury, implied from the verdict, that the bell was not ringing, is not sustained by the evidence.

The question whether the defendant was guilty of negligence which directly contributed to plaintiff's injury was,

we think, under the evidence, a question of fact for the jury upon which their verdict must be held conclusive.

Exchange avenue is thirty to forty feet wide. East of the tracks on the south side of the avenue was, at time of the accident, a two story building called the Government building. From the northwest corner of this building to the east rail of the track on which the engine in question ran was, according to the testimony of plaintiff, who made his measurements after the Government building had been removed, fourteen feet and eight inches, and according to the testimony of a witness called by defendant who testified that he had made his measurements the day after the accident, nineteen feet two inches. West of the southwest corner of the Government building there were five tracks which bore slightly to the west as they ran north. About twenty-five feet south of Exchange avenue a lead track left the east main track and bore slightly to the east as it ran north. The engine in question ran across Exchange avenue on said east main track. At the south line of said avenue one rail of said lead track was east of the east rail of the east main track, and at the north line of said avenue both rails of said lead track were east of the east main track. At a point about twenty-five feet north of Exchange avenue a track left said east main track, curving to the west as it ran north and running into the track next west about one hundred and sixty feet north of Exchange avenue. On the north side of said avenue was a shed, the west side of which was about ten feet east of the east rail of said lead track. Partly in front of this shed in Exchange avenue was a flagman's shanty about eight feet square. The east side of said shanty was directly north of the west end of the Government building. As plaintiff approached the crossing his view to the south was obstructed by the Government building and his view to the north by the shed and the flagman's shanty.

Plaintiff testified that he had often passed over the crossing at night as well as in the daytime; that he knew how the tracks ran; that he had often seen trains pass over the crossing and knew this was likely to occur at any time; that he

was driving at a fast walk near the middle of Exchange avenue and fifteen or twenty feet north from the Government building: "when I was approaching the tracks I was looking and listening"; that he heard no bell or train; that he looked south as far as he could when he was six to ten feet east of the west line of the Government building and neither saw nor heard anything; that he then looked to the north and again to the south when his horses were about on the track, and then saw the train coming from the south, but it was so close to him that it immediately struck his wagon and he was thrown out and injured.

The only direct testimony as to the speed of the train was that it was running at the rate of five or six miles per hour, but appellee's contention, based upon circumstantial evidence, is that its speed was ten miles per hour.

The conclusion reached by the majority of the court is, that the plaintiff, in driving upon the track in question, under the circumstances shown by the evidence and with his knowledge of the tracks and of the fact that a train was liable to come on one of said tracks from either direction at any time, was guilty of such contributory negligence as bars his right to recover for injuries he sustained.

In this conclusion the writer of this opinion is unable to concur. No doubt the engine might have been seen by plaintiff before he drove on the track and seen in time to permit him to stop his team before it went upon the track. But it is not contended that this fact alone is conclusive upon the question of his contributory negligence. In Chicago City Ry. Co. v. Fennimore, 199 Ill., 9, it was said, p. 16: "It has often been held by this court that it is not evidence of negligence *per se* that a person does not stop and look before crossing the track of a railroad, and it has been held a question for the jury whether the failure to stop and look is or is not negligence."

That where a plaintiff has judgment for injuries sustained by him by being struck by a car or engine and such judgment is brought before this court for review, the facts and circumstances shown by the evidence in the record may

so clearly show that the failure of the plaintiff to look in the direction from which the car or engine was coming and to see such car or engine before going upon the track, constituted and was such contributory negligence on his part as to make it the duty of the court, notwithstanding the verdict and judgment, to find as a fact that the plaintiff was guilty of contributory negligence, has been often held by this court and the other Appellate Courts of this State. The question in such a case is, whether the conclusion of the jury, that the plaintiff exercised reasonable care for his own safety, is one they might fairly and reasonably reach from the evidence.

In this case, so far as is shown by the evidence, a train was liable to cross at any time from either direction on any track; was as liable to come from the north on the lead track, the east rail of which was ten feet west of the shed and about six feet west of the flagman's shanty, as from the south on the east main track, the track on which it came, the east rail of which, according to appellant's contention, was nineteen feet and two inches west of the Government building and was twelve or fourteen feet west of the flagman's shanty. When plaintiff was far enough west so that his view of the lead track to the north was unobstructed by the flagman's shanty, he again looked to the south, but his team was then going upon the east main track and the engine was so near that the collision could not be avoided. He testified that he heard no bell and, as has been said, the jury was warranted in finding from the evidence that the engine bell was not ringing. Plaintiff testified that he looked south when he was from six to ten feet east of the west end of the Government building; the west end of the flagman's shanty was eight feet west of the west end of the Government building, and plaintiff, according to his testimony, drove from fourteen to eighteen feet from the time he first looked to the southward until he looked in that direction a second time. Whether, with the bell on the engine not ringing, it was negligence on his part not to look to the southward between the first time he looked and the second time he looked in that direction was, in the

opinion of the writer, a question for the jury upon which their verdict should be held conclusive.

The judgment of the Superior Court will be reversed with a finding of facts.

*Reversed with a finding of facts.*

MR. PRESIDING JUSTICE BAKER dissenting.