## Carl Schneeweisz, Appellee, v. Illinois Central Railroad Company, Appellant.

### Gen. No. 5,938.

1. RAILROADS, § 615*—*when no question presented of violation of ordinance requiring automatic bell at crossing.* In an action to recover for personal injuries sustained as a result of a collision between defendant's railroad train and a wagon in which plaintiff was riding at the time of the accident, no question is presented of the violation of a village ordinance requiring the maintenance of an automatic bell at railroad crossings where the ordinance is not in evidence, although there is evidence that such a bell was maintained at such crossing at the time of the accident, but was not in operation.

2. NEGLIGENCE, § 3*—*what constitutes ordinary care.* Ordinary care, as applied to the conduct of individuals, does not mean the highest degree of care.

3. NEGLIGENCE, § 1*—*what constitutes.* Negligence is the omission to do something which a reasonable man, guided by those ordinary considerations which ordinarily regulate human affairs, would do, or

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the doing of something which a reasonable and prudent man would not do.

4. NEGLIGENCE, § 198*—*when question for jury whether plaintiff guilty of contributory negligence.* The question whether a plaintiff seeking to recover for injuries alleged to have been sustained as the result of defendant's negligence was himself at the time of the accident in the exercise of the care for his own safety which a reasonable man would exercise under the same or similar conditions is a question of fact for the jury, unless the evidence of a want of such care is so clear that fair-minded men of ordinary intelligence would not differ as to the inferences to be drawn therefrom.

5. RAILROADS, § 250*—*when presumed jury found that plaintiff acted as a reasonable person would have done in crossing tracks.* In an action where plaintiff recovered a verdict for personal injuries alleged to have been sustained as a result of defendant's negligence, the jury in finding for plaintiff must be presumed to have found that a reasonable man, guided by those considerations which ordinarily regulate human affairs would under similar circumstances have acted as the evidence shows plaintiff acted at the time of the accident.

6. RAILROADS, § 755*—*when question for jury whether plaintiff crossing tracks while view obscured guilty of contributory negligence.* In an action to recover for personal injuries sustained by plaintiff as a result of a collision occurring at a railroad crossing between defendant's freight train and a wagon in which plaintiff was riding, which collision was alleged to be due to defendant's negligence, and where contributory negligence was relied on in defense, and there was evidence that plaintiff's view of the track in the direction from which such train was approaching was obscured by box freight cars and buildings standing on defendant's right of way; that the ground was frozen and a high wind was blowing which, with the noise of the wagon on the frozen ground, tended to deaden the sound of the approaching train; that an automatic bell was maintained by defendant at such crossing which was not in operation at the time of the accident on which plaintiff might have relied to give warning of the approach of such train; and that, if the whistle and bell on the locomotive of such train were sounded, plaintiff did not hear them, *held* that it was a question for the jury whether plaintiff was guilty of contributory negligence, although plaintiff did not look and listen before crossing the track and there was evidence that had he done so he would have seen the approaching train.

7. NEW TRIAL, § 52*—*when not allowed because verdict against evidence.* In an action where the evidence presents a question for the jury, a motion for a new trial will not be allowed unless the verdict of the jury was manifestly against the evidence, although

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the trial judge, if sitting as a juror, might not have consented to the verdict sought to be set aside, or, if trying the same case without a jury, might have found differently on the same facts, for the reason that if no verdict of the jury which did not meet the view of the trial judge as to the facts on which the verdict is found is to be accepted, the jury would be useless as a part of the trial.

8. Appeal and error, § 1410*—*when finding conclusive on appeal.* Although the present method of presenting a stenographic report of the evidence to a court of review has many advantages not possessed in former practice by a brief bill of exceptions, and better enables a court of review to determine the weight of evidence, yet where the trial court and the jury seem to have acted fairly and intelligently in reaching the conclusions sought to be reversed, a court of review has no power to reject such conclusions, although it may seem to such court that if it had acted in the place of such trial court and jury it might have reached a different conclusion.

9. New trial, § 52*—*when properly denied because verdict not against manifest weight of evidence.* In an action to recover for personal injuries sustained as a result of defendant's negligence, because of a collision between defendant's railroad train and a wagon in which plaintiff was riding, a motion for new trial on the ground that the verdict was against the manifest weight of evidence, *held* properly denied.

10. Railroads, § 695*—*when declaration sufficiently alleges negligent operation of train at excessive speed.* In an action to recover for personal injuries sustained by plaintiff as a result of a collision occurring at a railroad crossing between a wagon in which plaintiff war riding and defendant's freight train, a count in plaintiff's declaration charging a violation of a village ordinance limiting the speed of such trains to ten miles an hour in that "said defendant then and there ran a freight train on one of its tracks * * * at a speed of * * * thirty miles an hour, down to, upon and across said street and down to and upon said plaintiff," and also a count charging that defendant ran such freight train "down to and over and across said street at a rate of speed exceeding ten miles an hour in violation of said ordinance," cannot be narrowed by construction so as to limit the charge of excessive speed to the space covered by the crossing, and to warrant the objection that the counts were not supported by proof of the excessive speed of the train before reaching the crossing.

11. Railroads, § 737*—*when evidence sufficient to sustain finding as to rate of speed of train in passing over crossing.* In an action to recover for personal injuries sustained by plaintiff as a result of a collision occurring at a railroad crossing between defendant's

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

freight train and a wagon in which plaintiff was riding, which collision was alleged to be due to defendant's negligence, where plaintiff's declaration charged a violation of a village ordinance limiting the speed of such trains to ten miles an hour, evidence *held* to sustain a finding that the train in question was running at a speed greater than ten miles an hour at the time of the accident.

12. RAILROADS, § 737*—*when evidence sufficient to sustain finding as to operation of train over crossing at negligent speed.* In an action to recover for personal injuries sustained by plaintiff as a result of a collision occurring at a railroad crossing between defendant's railroad train and a wagon in which plaintiff was riding, where plaintiff's declaration charged negligence in that the speed at which the train in question was being run at the time of the accident was in violation of a village ordinance limiting the speed of such trains to ten miles an hour, evidence *held* sufficient to prove negligence as charged, it appearing that such violation of such ordinance contributed to the injury complained of.

13. TRIAL, § 211*—*when denial of peremptory instruction on ground of variance properly refused.* In an action to recover for personal injuries sustained by plaintiff as a result of a collision occurring at a railroad crossing between defendant's freight train and a wagon in which plaintiff was riding, where three counts of plaintiff's declaration alleged that defendant's engine struck such wagon and threw plaintiff out causing the injuries for which recovery was sought, and where the fourth count alleged that such injuries were caused by such engine striking plaintiff, the denial of a peremptory instruction for defendant on the ground of variance in that the evidence was alleged to show that plaintiff's injuries were due to falling against such engine after jumping out of such wagon, *held* not erroneous where the motion for such instruction was directed to all the counts and not to each of the counts, the court being unable to allow such motion as to the fourth count, and also for the reason that there was evidence on which the jury might have found the fact to be as alleged in the first three counts.

14. RAILROADS, § 718*—*when evidence admissible as to rate other trains passed crossing.* In an action to recover for personal injuries alleged to have been the result of a collision occurring at a railroad crossing between defendant's railroad freight train and a wagon in which plaintiff was riding, where the negligence alleged was in part that the train in question was at the time of the accident being run at a rate of speed which was in violation of a village ordinance limiting the speed of such trains to ten miles an hour, *held* not error to permit plaintiff's witnesses to testify that other trains of defendant ran through the village in question at a high rate of speed, it

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

appearing that the testimony objected to was brought out on redirect examination, after defendant had made such witnesses to testify that the two main tracks of defendant at the point where the accident occurred were constantly used by fast moving trains of defendant, most of which did not stop at such village, and where it did not appear that plaintiff sought to emphasize other violations of the ordinance, and that such testimony did not exceed what was required by what defendant brought out on cross-examination, or materially add thereto.

15. APPEAL AND ERROR, § 1238*—*when party estopped to object that improper subject introduced at trial.* A party cannot on review be heard to object that a subject which such party introduced into the trial was improper.

Appeal from the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding. Heard in this court at the April term, 1914. Affirmed. Opinion filed October 20, 1915. *Certiorari* denied by Supreme Court (making opinion final).

SNAPP & HEISE, for appellant; W. S. HORTON and J. G. DRENNAN, of counsel.

COWING & KING, for appellee.

MR. JUSTICE CARNES delivered the opinion of the court.

Appellee, Carl Schneeweisz, was on January 29, 1912, riding west in an ordinary farm wagon drawn by two horses driven by one Jacobs, on a public street across the double main track and two switch tracks of the appellant, Illinois Central Railroad Company, in the Village of Peotone, Will county, Illinois. There were two other men in the wagon, Nadler and Deininger. The latter was a stock buyer and grain dealer with his office near by. He had lived there for years, was supervisor of the town, and very familiar with the crossing and the operation of the trains over it. The other three men were all farmers living in the vicinity and were quite familiar with the crossing. The team passed over one switch track and over the northbound main track and the wagon was struck by

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the engine and a long freight train that was moving at a speed from twenty miles an hour seven hundred feet north of the crossing, decreasing to perhaps ten or twelve miles an hour as it reached the crossing. The four men were all standing in the wagon, Jacobs, the driver, and appellee near the front, Nadler and Deininger near the rear. They could, any of them, have seen the train approaching from the north in time to stop the team and avoid the collision, but none of them did see it until the horses were near the southbound track, when they discovered it. Nadler and Deininger jumped from the rear of the wagon, appellee attempted to jump from the side, and it is not clear whether he was out of the wagon when it was struck by the engine. Jacobs remained in the wagon and was thrown with it some distance. Appellee sustained injuries for which he brought this action, and in his declaration, alleging due care on his own part, in different counts charged appellant with negligence; in violating a village ordinance limiting the speed of trains to ten miles an hour; in running at a great and dangerous rate of speed onto and across said highway; in failing to ring a bell or blow a whistle before reaching the street; in allowing box cars and buildings within its control to stand on its right of way obstructing the view; and in violating another ordinance of the village requiring an automatic bell to be operated at the crossing; and charging that appellant had an automatic bell at the crossing that had been before operated but at the time was out of repair and failed to give warning.

A plea of not guilty was filed and a jury trial followed. Appellee failed to get the automatic bell ordinance in evidence, therefore no question of violating that ordinance is presented; though the fact that there was a bell there that had been used and was out of order, and not then in operation, is one of the circumstances to be considered. There was a verdict and judgment for the plaintiff for $4,000, from which judgment

this appeal is prosecuted, and a reversal sought mainly on the ground that the evidence fails to show due care on the part of appellee, but on the contrary clearly shows that he was guilty of negligence contributing to his injury. It is also argued that the evidence does not show any act of negligence of appellant charged in the declaration; in other words, it is claimed that it is clear that appellee was not at the time in question exercising that care for his own safety that an ordinarily prudent man would have done under the same or like circumstances, and that appellant was not guilty of the negligence charged. It is urged with great earnestness that the trial court should have directed a verdict for the defendant, if for no other reason, on the ground that it is so clear from the evidence that appellee was not in the exercise of ordinary care for his own safety, that there is no ground for difference of opinion among fair-minded men on that question. The fact that he did not look, as he might, and see the train approaching in time to jump from the wagon in safety, or cause the driver to stop before reaching the track, is pressed upon our attention, and we are referred to a number of cases in this and other courts holding, in substance, that while it cannot be said as matter of law that it is negligence not to stop and look and listen before crossing a railroad at grade, still if under the circumstances ordinary care and prudence requires one to look and listen, then if an injury results that could have been so avoided it is a case of contributory negligence and the plaintiff cannot recover. It is no doubt difficult for the layman or even the lawyer to fix definitely in mind what is meant by ordinary care, due care, etc., as applied to the conduct of individuals. It is clear that it does not mean the highest degree of care. There is a degree of care that would have prevented the accident in this case if appellee had exercised it, and it is difficult to conceive of a pedestrian, or driver of a vehicle, injured by collision on a railway crossing of

a public highway, where he could not have avoided the injury by the exercise of a high degree of care, to ascertain before he went upon the railroad tracks whether there was a train approaching; yet there are many cases where the plaintiff has been permitted by reviewing courts to maintain his judgment obtained for injuries received under such circumstances. Our Supreme Court has repeatedly defined negligence to be "the omission to do something which a reasonable man, guided by those ordinary considerations which ordinarily regulate human affairs, would do, or the doing of something which a prudent and reasonable man would not do." *Pittsburgh, Ft. W. & C. Ry. Co. v. Callaghan,* 157 Ill. 406. This means if at any given time and place a plaintiff is exercising that care which a reasonable man would ordinarily exercise under the same or similar conditions, it is all that is required of him. Whether he did measure up to that standard at the time and place in question is a question for the jury unless the facts and circumstances proven are so clear that fair-minded men of ordinary intelligence would not differ as to the inferences to be drawn from them. *Pittsburgh, Ft. W. & C. Ry. Co. v. Callaghan, supra,* in which case there is really no question of fact to decide and therefore none to submit to the jury.

There is no claim in this case that either of the four men in the wagon at the time in question was intoxicated. They seem, each of them, to have been normal men; they each testified on the trial of this case, and it would appear from a reading of their testimony that the three farmers in the wagon might any one of them be selected, if there was a search in their community for an ordinarily prudent man, to use as a measure of conduct; and it is quite clear that Deininger, the stock dealer and supervisor, was above the average of mankind, and because of that fact might well have been objected to as a standard of ordinary care and prudence to measure other men by. The claim that appel-

lee was negligent rests entirely on the fact that he did not look and listen and thus avoid the injury; but they all saw the train at about the same time; the two men standing in the rear of the wagon had, for that reason, a better opportunity to jump out, and they did so in time to avoid serious injury. Appellee seems to have attempted to get out at practically the same time, and, as we have said before, the evidence leaves it in doubt whether he was clear of the wagon before the engine struck it. It is of course possible that each of these four men was at the time and place in question omitting something which a reasonable man would do under the same or similar circumstances, but the fact that four reasonable men did under given circumstances do, and omit to do, certain things, tends in some degree to, at least, the impression that the hypothetical reasonable man, if he had been there at that time and under those circumstances, would have acted as they did; and a consideration of the situation in our opinion affords reason for the conclusion reached by the jury that appellee's conduct was not below the requirement of ordinary care. The east track was a switch track. The next was the northbound main track. The next was the southbound track, on which this train was running. The most western track was a switch track. East of the track and on the right of way north of the street crossing was a place where lumber and other merchandise was piled, and then several coal sheds and then the cattle yards. East of these sheds, but on the right of way, was a traveled way leading from the street north to the coal sheds and the cattle yards. Appellee and the other two farmers had delivered some live stock to Deininger at the cattle yards shortly after noon of that day and Deininger had been there with them. They all got into the wagon at the cattle yards to go to the office, which was south of the cattle yards and west of the tracks. They drove down this roadway to the street and turned west towards the tracks. The

evidence is contradictory whether there were box cars standing on the switch that would obstruct their view north, but over most of the roadway their view was obstructed by the sheds and they could not get an unobstructed view north on the right of way, much, if any, before turning to cross the tracks; but they could get such a view about thirty feet before reaching the east switch, and sixty-one feet from the southbound track on which they were struck. An automatic bell had theretofore been used by appellant at that crossing to give warning of approaching trains. It is not clear from the evidence when it got out of order, but it was not operated at that time. The men in the wagon were familiar with the crossing and therefore knew that there was a bell there and they may have somewhat relied on that for a warning. The main track nearest to them was the northbound track. They would naturally at first give most attention to the south to see if there was a train approaching on the first track they were to pass over, and they seem to have done so, though Jacobs says he looked north as they were about to turn and saw no train approaching, and appellee says he listened as they approached the crossing and heard no train. There was not a clear view to the south for a great distance, which naturally kept their attention directed that way for a longer time. There was a high wind blowing (there is no doubt of that; it is questioned in one part of appellant's brief and admitted in another part); this, with the sound of the wagon on the frozen ground, tended to prevent their hearing the sound of the approaching train. If the bell of the approaching train was ringing or the whistle blowing (there is a conflict of evidence about that), none of these men heard it, and under the conditions it is likely they might not hear it. Deininger says he discovered the train and called out "jump" and jumped from the wagon taking Nadler with him. Appellee did not hear Deininger call out but saw the train and jumped at

about the same time., The jury must be presumed to have found that a reasonable man guided by those ordinary considerations which ordinarily regulate human affairs would ordinarily have done as appellee did at that time and place. We have no doubt that the evidence presented a question for the jury to determine, and to be determined by the trial court only in passing on the motion for a new trial. If he was then of the opinion that, had the case been submitted to him on the facts, he would have found otherwise, or that if he had been acting as a juror instead of a judge, he would have refused his assent to the finding, it by no means follows that he should have granted a new trial. If such was the position and duty of the trial judge, and no finding of the jury that did not meet his own views of the facts should be accepted, the jury would become an utterly useless part of the trial. The question before the trial judge was whether the verdict of the jury, involving the finding that appellee was at the time in the exercise of ordinary care, was so manifestly against the evidence that he should submit the question to another jury. He refused to do so, and it is our duty to determine whether he erred in so doing.

Counsel for appellant suggest that the oft repeated statement in the opinions of courts that the jury and trial judge saw the witnesses and heard them testify, and therefore were better able to judge the controverted facts, is grounded in old practice where the bill of exceptions was very brief and perhaps, in fact, unreliable, and that under the present practice, where this court is furnished with a stenographic report of the evidence, the rule should not govern. It is no doubt true that the present method of presenting the evidence to a reviewing court has many advantages that the court can better judge the weight of the evidence than under the old method of presenting an abridgement of the testimony; but reading the words of a witness, or of any narrator of facts, does not place the reader in

so good a position to judge the truth as if he heard the spoken words and observed the manner of the speaker. This is common knowledge generally recognized by the courts. And even had we seen and heard the witnesses in this case, and felt that, had our duty been that of jurors, we would have found a verdict of not guilty, still it would not follow that we, for that reason alone, should reverse and remand the case. The jury and trial judge were performing duties imposed on them by law in passing on the facts in this case. There was a question that intelligent men might well differ in answering, and if the jury and trial court in our opinion acted fairly and intelligently in reaching their conclusions, we are given no power to reject them merely because it may seem to us that in their place we would have reached a different result. There may be intelligent as well as honest differences of opinion on doubtful questions. We think this record presents a case where we should accept the conclusion of the trial court and jury on the question of ordinary care of appellee.

While appellant seems to urge the question of appellee's care with the most confidence, and it seems to us the difficult question in the case, it is urged also that the evidence does not support any allegation of negligence of the defendant. It is not, and cannot be, questioned that appellant was running its train, approaching the crossing, within the village limits, which were 1,500 feet north of the crossing, at a rate of speed much in excess of ten miles an hour, the limit fixed by the village ordinance. Neither is any question raised as to the validity of the ordinance, but it is said the declaration, in the counts charging violation of that ordinance, alleges that the train was run at the high rate of speed complained of at the crossing in question, and therefore is not supported by proof that it ran at that speed before reaching the crossing. There is conflict in the evidence whether it had slowed down to ten miles an hour or less when it reached the crossing.

The first and second counts of the declaration each charge violation of this ordinance; in the first it is alleged that "said defendant then and there ran a freight train on one of its tracks from the north at a speed exceeding ten miles per hour, to-wit: thirty miles an hour, down to, upon and across said street and down to and upon said plaintiff," and in the second that "the defendant ran a freight train over one of said tracks from the north down to and over and across said street at a rate of speed exceeding ten miles per hour, contrary to the provisions of said ordinance." It seems too narrow a construction of the language of those counts to limit the charge of excess speed contributing to the injury to the space covered by the crossing. But even were that the necessary construction, and the evidence of the rate of speed before the crossing was reached to be considered only on the question of its speed at the crossing, and on the question of appellee's care in approaching the crossing perhaps on the asumption that no train would approach faster than ten miles an hour, still we are satisfied the jury were warranted by the evidence in finding that the train was running in excess of ten miles an hour at the time of the collision. The engineer and conductor placed the speed at the crossing at nine miles an hour, the fireman at eight to ten miles an hour, the station agent at ten miles an hour, said it might have been eleven miles; another witness called by the defendant placed it at ten or eleven miles an hour. Six or seven witnesses called by plaintiff estimated the speed at fifteen to twenty-five miles an hour. There is also proof of how far the train went after the collision before stopping, and how far the team went after it turned onto the crossing, when witnesses saw both it and the train, and how fast the team was moving; from various of which items of proof counsel for each side figure out with much ingenuity proof of their respective contentions. The familiar argument of

defendant's that train men are better judges of the speed of trains, and of plaintiff's that train men are not dependable witnesses as to that matter, because they are interested, is pressed upon us by the respective counsel. It will serve no useful purpose to further set out in detail the evidence supporting these contentions; nor is it necessary to discuss the obvious fact that violating the ordinance contributed to the injury complained of. There is in our opinion no cause for disturbing the verdict on the ground that negligence, as charged, was not proven. It is unnecessary to consider the evidence on other charges of negligence of appellant.

It is argued that there is a variance between the declaration and proof, the allegation in three counts being that the engine struck the wagon and threw plaintiff out, whereas it is contended he was out of the wagon before it was struck, and his injuries resulted from his jumping from the wagon and falling or jumping against the engine. This supposed variance was only presented to the trial court in the motions for a directed verdict at the close of the plaintiff's evidence, and of all the evidence. The fourth count of the declaration did not charge that the wagon was struck, but charged plaintiff was struck, therefore the court could not direct a verdict as to that count on that ground, and the motion was directed to all the counts, not to each of them. There was evidence however from which the jury could have found the occurrence as alleged. We see no reversible error on that ground. It is argued that the court erred in permitting witnesses for plaintiff to testify that other trains of appellant ran through the village at a high rate of speed. This testimony came on redirect examination of one of plaintiff's witnesses who had been made to state on cross-examination that the two main tracks were constantly used by fast moving trains of appellant, and that the bulk of the fast trains did not stop in Peotone.

There was no effort by plaintiff to emphasize the fact of other violations of the ordinance, and nothing proven in that respect not justified by the evidence for which appellant was responsible, or materially adding to the facts shown on the cross-examination. Appellant cannot be heard to object that a subject it introduced was improper. It is not claimed that the court erred in its rulings on the testimony, except as above stated, or that there was error in the instructions to the jury, except in refusing peremptory instructions, or that the verdict is excessive. Appellee assigns cross-errors, and argues that the court erred in its rulings as to the evidence offered under the automatic bell count of the declaration. We find no reversible error assigned by appellant, and conclude the judgment should be affirmed; therefore will not discuss the cross-error further than to say that we are of the opinion the court did not err in its rulings there questioned. The judgment is affirmed.

*Affirmed.*