CORA M. BOOTH, Administratrix of the Estate of FAY BOOTH, Deceased, Appellant, v. THE UNION TERMINAL RAILWAY COMPANY.

**Railroads:** TRESPASSERS: LICENSEES. Where the employes of a packing house company have for years, with the knowledge of the railway company, been accustomed to cross its switch tracks in passing from one building to another about their work, and the railway company has offered no objection or. obstruction to such use, it will be held to have consented thereto, and one of such employes killed while so crossing its tracks was not a trespasser but a licensee.

**Contributory negligence:** EVIDENCE. In an action for the death of a packing house employe struck by a passing car while crossing defendant's tracks in going from one building to another, 'the evidence is reviewed and held that he was not gulty of contributory negligence as a matter of law, in not using a crossing or in failing to look and listen for an approaching car, before going onto the tracks.

*Appeal from Woodbury District Court.*— HON. G. W. WAKEFIELD, Judge.

THURSDAY, OCTOBER 27, 1904.

SUIT to recover damages for the death of Fay Booth. There was a directed verdict for the defendant, and from a judgment thereon the plaintiff appeals.— *Reversed.*

*J. L. Kennedy, E. A. Morling,* and *F. C. Davidson,* for appellant.

*Charles A. Dickson* and *T. F. Bevington,* for appellee.

Sherwin, J.— The deceased was about eighteen years old at the time of his death, and was then, and for several days previous thereto had been, in the employ of the Cudahy Packing Company in Sioux City. The plant of this company consists of a group of buildings separated by an alley several hundred feet in length running north and south. The killing and packing building, in which the deceased worked, was on the west side of the alley, and the timekeeper's office and the general office were at some distance apart on the east side of the alley. Extending the entire length of the alley, and near the center thereof, was the main switch track used by the defendant for the purpose of reaching the Cudahy plant and the Armour plant, which was situated some distance south of the Cudahy plant. Abutting the alley in front of the east row of buildings was a loading platform about three feet high running from the room occupied by the timekeeper south several hundred feet to the general office. There was also a platform of nearly the same length in front of the west row of buildings. Near the north ends of these platforms there was a sufficient plank crossing connecting them. South of this crossing, and on either side of the main switch track, there was a track immediately in front of the platform. There were also two tracks north of the crossing, similarly situated. These side tracks did not, however, extend over the crossing in question, which was at grade where it crossed the track. The killing and packing building or room was south of this crossing and north of the general office. The deceased, with two fellow workmen, left the building together a little before 6 o'clock in the afternoon, for the purpose of reporting their time at the general office, coming out of the building through the hide cellar door towards the loading platform. Immediately in front of this point two cars, coupled together, were standing on the track, the north one of the two being an offal car and the south one an ordinary box car. Upon reaching the platform they stopped and looked to the north for a moment, and

then walked south to a point a couple of feet south of the south end of the box car, where they left the platform to cross the tracks. The other two were ahead of the deceased, and crossed safely, but just as he stepped towards the main track he was struck and killed by one of the defendant's trains, running south at the rate of eighteen or twenty miles an hour. The engine was pushing one box car and drawing several others, and no alarm was sounded as the train went through the alley. One of the defendant's employés was standing on the top of the forward car, but he was not looking ahead of the train. A motion to direct a verdict for the defendant was made and sustained at the close of the plaintiff's evidence, and we have two questions for determination: First, was the deceased a trespasser? and second, if not, was he guilty of contributory negligence? The court sustained the motion on the latter ground.

A thousand or more men were employed in and about the Cudahy plant, and had been so employed a long time prior to the accident in question. Approximately one-half of the employés worked on the west side of these tracks, and each day when they quit work it was their custom, required by the rules of the Cudahy Company, to report their time either at the timekeeper's office or at the general office, depending upon the time they reported. The evidence showed that these employés, as well as those working on the east side of the tracks, were, and had been for years, in the habit of crossing the tracks at all points along the alley between the buildings; that such practice was more common than the use of the crossing at the north ends of the platforms; that this practice was fully known to the defendant's employés during all of the time, and that no objection had ever been made thereto by the defendant. The tracks were laid on the surface of the ground, and between them and between the rails of each cinders had been put in and leveled off, so that the entire surface of the alley between the buildings was level and smooth.

1. TRESPASSERS: licensees.

In *Clampit v. C., St. P. & K. Ry. Co.,* 84 Iowa, 71, the plaintiff, in going back and forth between his home and his work, crossed the defendant's tracks on a footpath much used by the public, and which was just at the foot of a high bank where a stairway had been built by persons using such crossing. It was contended in that case that the plaintiff was a trespasser, and not entitled to recover, but we held otherwise, and said:

There were no fences along the road, and nothing to prevent all persons desiring to do so crossing the road freely. The defendant and the railroad company owning the track, or either, had in no manner forbidden the crossing of the track by footmen, and had thrown no obstacles in their way. The fact that the place at the stairs was used as a crossing by pedestrians, who also crossed at other places near by, was known by the employés of the defendant, and by the engineer who operated the engine which struck the plaintiff. The stairway and the ties across the ditch, as well as the path made by footmen, prominently advertised the place as a crossing used by pedestrians. No engineer or fireman passing along the tracks at that place with his eyes open, in the exercise of reasonable watchfulness and care, could have failed to see these indications of the footpath, and to understand therefrom that it was used by pedestrians, if he possessed ordinary intelligence. The defendant and the railroad company owning the track, having through their employés and officers knowledge of the use of the footpath crossing, and having made no objections thereto, nor erected fences, walls, or other obstructions to such use, will be presumed to assent to it; thus giving all who use the crossing license therefor. The plaintiff, therefore, was not a trespasser upon the railroad track, but is entitled to all the rights and protection of one rightfully upon it with the license of the defendant.

This case was followed in *Thomas v. C., M. & St. P. Ry. Co.,* 103 Iowa, 649, where a child was injured on the defendant's track, where the public was accustomed to travel with the knowledge of the defendant. After quoting from the Clampit Case, it was said:

This language applies as well to the facts in the case at bar. Here was an almost constant use of this track. Here were well-defined footpaths, and a ladder in use for years for the purpose of reaching the track. The track repairers knew the ladder was there. The roadmaster had actual knowledge of it. The superintendent had once, at least, been where, if he used his eyes, he must have seen it. It was in plain view of all the train operatives;   *   *   *   and, with the fact undisputed of the use of the ladder, paths, and track for years without objection from the defendant or any of its employés, all these and other facts would warrant a finding by the jury that the use of the track was by the consent of the defendant, and therefore the child  *  *  *  was not a trespasser.

We again approved the rule in *Scott v. St. L., K. & N. W. Ry. Co.*, 112 Iowa, 54, and in *Edington v. B., C. R. & N. R. Co.*, 116 Iowa, 410. The basis of these footpath decisions is that the use of the railroad tracks was so common and so well defined that the companies were charged with knowledge of such use, and making no objections or obstruction thereto, were presumed to assent to it.

The instant case presents to our minds much stronger grounds for applying the rule thus announced than do any of the cases cited. Here the Cudahy buildings were arranged for the purpose of having switching facilities between them, and the tracks were laid through the alley for their accommodation. The buildings extended many hundred feet on each side of the tracks, and throughout the entire length they were occupied by the employés of the packing company, all of whom engaged on the west side of the tracks, at least, were required to cross the tracks at some time during the day. That they would cross at the point most convenient for them, rather than walk to the plank crossing, several hundred feet away, might well have been presumed by the defendant, in the absence of a physical demonstration that such was in fact the case. But for two years, at least, before the accident in question, these hun-

dreds of men had crossed and recrossed these tracks daily with the full knowledge of the defendant. When there was snow on the ground many well-defined paths crossed the tracks, but we do not deem this a circumstance of great weight because of the location and purpose of the tracks and the well established fact that the men crossed at all points between the buildings. It is the knowledge of the constant use of the tracks that binds the railroad company, and when it appears that such use is at all points along its tracks for several hundred feet the case falls clearly within the rule of the cases cited. While a railroad company is not ordinarily required to look out for persons who may cross its tracks at points where there is no well-defined use thereof for such purpose by the public, it cannot be said as a matter of law that the defendant was not required to be on the lookout in this case. *Ballimore & Potomac R. Co. v. Cumberland,* 176 U. S. 232 (20 Sup. Ct. 380, 44 L. Ed. 447).

The cases cited on this branch of the case by the appellee are based so largely upon the facts of each particular case that we will not extend this opinion for the purpose of reviewing them. In many of the cases the injured person was walking upon the railroad track, and in *Bryson v. C., B. & Q. Ry. Co.,* 89 Iowa, 677, we held that there was a distinction between walking on the track and crossing the same. In *Wagner v. Chicago & N. W. Ry. Co.,* 122 Iowa, 360, we held that the implied invitation to the public to use well-defined cinder paths provided for use as ways excluded an implied invitation to walk elsewhere, and therefore the defendant had the right to assume that the public would confine itself thereto. We reach the conclusion that the deceased was not a trespasser upon the defendant's track.

The two men who left the killing and packing house with the defendant were Dave Brodigan and John Hanesuer.

2. CONTRIBUTORY NEGLIGENCE: evidence. Brodigan testified that both he and the deceased looked north for a moment or two when they first reached the platform, and that there were no cars

moving on the tracks in that direction; that the three of them then went south on the platform about thirty-five feet to the south end of the box car, where they left the platform, and started across the tracks, he ahead, and the deceased behind; that just as he was about to leave the platform a friend on the east platform called to him to "hurry up, and beat Wells"; that he then jumped and started to run, and did not look for a train, or see or hear the one approaching from the north. Hanesuer followed Brodigan across the tracks, and both arrived safely on the other side. It was shown that the deceased did not again look north, nor did he look south, as he stepped by the end of the car and upon the track where he was struck. Just as he was stepping upon that track his peril was noticed by co-employés on the east platform, who called to him. He looked up, but in the same instant the train struck him. His view from the platform where he looked north was partially obstructed, but that it was not wholly so is shown by the evidence of witnesses who afterwards made observations from the same point, and under practically the same circumstances, and who testified that about two feet of an ordinary box car could be seen four or five hundred feet north; and the evidence tended to show that a train coming south from that point would come into clearer view as it approached until it reached the cars standing immediately in front of the hide cellar door. The plank crossing of which we have spoken was about one hundred feet north of this cellar door. The record does not show by whom it was placed there, but does show that it was used for trucking and other purposes. Had the deceased gone to that crossing, he would have had no tracks to cross except the center or main one. There were cars standing on the west track north of the crossing, however, and whether the danger of crossing there without looking immediately before stepping upon the track would have been greater or less than where the deceased at-

tempted to cross would depend very much upon his position on the crossing.

Whether, under all of these facts and circumstances, it should be held as a matter of law that the deceased was negligent in not using this crossing, and in not looking and listening when he stepped around the car and before going upon the main track, are questions presented in argument, and the latter one, at least, is very close. As to the former, it is contended that the plank crossing afforded a safe way, and that it was negligence to cross at any other point. This was a question for the jury, however. The crossing was a private one, for which no statutory signals were required and none given. The train passed over it at the same speed that it traveled elsewhere through the alley, and, aside from the fact that the side tracks did not extend over it, it was no more safe than any other point between the buildings; and, as we have said, the implied invitation to cross the tracks applied as strongly to all other points as to this because of the long-continued custom and practice of the employés. Had it been an absolutely safe and convenient way, it might, perhaps, be said as a matter of law that the deceased was negligent in not using it. If the deceased's view from the platform when he looked north had been entirely obstructed, there can be no question as to his duty to again look when he reached a point where he could have seen the track, and under such circumstances the fact that others had safely crossed immediately before him would not, perhaps, excuse his neglect. But here he could have seen moving cars at least 500 feet away. He and Brodigan both looked north, and the latter saw no cars in motion; hence it may be presumed that the deceased saw none. They immediately thereafter started to walk south, and in a few seconds later the other two had crossed the track in safety ahead of the deceased, and without any warning to him that a train was approaching. Had the train been running at the ordinary yard speed instead of at the rate of 18 or 20 miles an hour,

the deceased could have crossed the tracks in perfect safety, and is it not fair to presume that he considered this matter when he started from his point of observation to make the crossing? *Camp v. C. Gt. W. Ry. Co.,* 124 Iowa, 238.

Could different inferences justly be drawn from the acts of the deceased, under all the facts and circumstances proven? If so, it was error to hold as a matter of law that he was negligent. *Selensky v. C. G. W. R. Co.,* 120 Iowa, 113; *Cummings v. C., R. I. & P. Ry. Co.,* 114 Iowa, 86; *Moore v. C., St. P. & K. C. R. Co.,* 102 Iowa, 599; *McLeod v. C. & N. W. Ry. Co.,* 104 Iowa, 141, and cases there cited; *Schulte v. C., M. & St. P. Ry. Co.,* 114 Iowa, 94; *Cleveland, C., C. & I. Ry. Co. v. Harrington,* 131 Ind. Sup., 426 (30 N. E. 37); *Pittsburg, Ft. W. & C. Ry. Co. v. Callaghan,* 157 Ill., 406 (41 N. E. 909); *Grand Trunk R. Co. v. Ives,* 144 U. S. 408 (12 Sup. Ct. 679, 36 L. Ed. 485). While, as we have heretofore said, the case is close, we reach the conclusion that it should have been submitted to the jury, and the judgment is therefore *reversed.*