MEYER TARASHONSKY by his next friend, W. TARASHON-
SKY, v. ILLINOIS CENTRAL RAILROAD COMPANY, Appellant.

**Railways:** WILFUL NEGLIGENCE. Where the evidence is such as to justify the conclusion that enginemen saw a child upon the track in time to have stopped the engine by the exercise of ordinary care and have avoided the injury, a finding of wilful negligence in failing to do so is justified.

**Same:** VERDICT: SPECIAL INTERROGATORY: INCONSISTENCY. An indefinite answer to a special interrogatory will not justify a disregard of the general verdict, but the answer must be conclusively against the verdict.

**Railways:** LOOKOUT FOR TRAVELERS: NEGLIGENCE. Trainmen are bound to keep a lookout for travelers, and if by the exercise of ordinary vigilance they might have seen deceased upon a traveled way, and have avoided the collision, the company is chargeable with negligence.

**Railroad crossing:** LICENSED WAY: EVIDENCE. On a question whether a beaten path, by which deceased went onto the defendant's railroad tracks in attempting to cross the same, was a licensed way, the evidence is reviewed and held sufficient to take the issue to the jury.

**Same:** INSTRUCTION: ASSUMPTION OF FACTS. Where the evidence was such that the right to use a railway crossing under a license from the company was a question for the jury, a requested instruction calling attention to an item of the evidence on that issue, and telling the jury that deceased was a trespasser at the time of the accident, was properly refused.

**Instruction:** ASSUMPTION OF RISK BY LICENSEE. Where the court left it to the jury to say whether the enginemen in the exercise of ordinary care might have seen deceased in time to have avoided the accident, refusal to instruct that if deceased was a lecensee he assumed the risk of dangers incident to a proper use of the tracks and operation of the engine, was not erroneous.

*Appeal from Woodbury District Court.*—HON. DAVID MOULD, Judge.

TUESDAY, OCTOBER 27, 1908.

ACTION for damages resulted in verdict and judgment for plaintiff. Defendant appeals.—*Affirmed.*

*W. S. Kenyon, Henderson & Freibourg,* and *Thos. D. Healy,* for appellant

*Strong & Whitney,* for appellee.

LADD, C. J.—About one hundred feet east of the yard tracks of the defendant is Clark street, and in close proximity to the west of these are the yard tracks of the Chicago, St. Paul, Minneapolis & Omaha Railway Company, and farther on is Wall street. Clark street is intersected at right angles by Seventh street, which crosses the eighteen tracks of the two companies, and just beyond the last track on the north side of the street is the watchman's house, the occupant being an employe of both companies. West of the tracks is a steep embankment, so that Seventh street descends in approaching them from the west. To the north Seventh, Eighth, Ninth, and

Tenth streets between Clark and Wall streets, have been vacated.. Shortly before noon of January 6, 1905, the plaintiff, a boy five years old, was run down by the defendant's switch engine, backing to the north from Seventh street at a point on the east track opposite the north side of Eighth street. Some evidence tended to show that the child was playing on or between the tracks at the time, but the jury found otherwise in answer to a special interrogatory, and that he, with a brother two years old, was returning from school on Seventh street west of the tracks, and had come diagonally across them towards his home, facing Clark street and a little north of Eighth street. The company, as had been its custom for some time, had placed what was known as the clipper passenger train on the second track from the east, the Chicago passenger train on the third track, and on the fourth and fifth tracks were cars for repair or storage nearly to Seventh street. The collision occurred not far north of the south end of the clipper train. The grounds of negligence alleged were: (1) That defendant employes saw plaintiff in time to have avoided the accident, or (2) should have done so; (3) that no warning of the approach of the train was given; and (4) that the switch engine was moving at an excessive speed.

I. The switch engine was backing north with the engineer looking to the rear from the west window. A brakeman (some witnesses say two) was standing on the footboard looking in the same direction, and if the steam was not escaping from the pipes of the passenger cars on the second track, the jury might well have found that these men saw plaintiff soon enough so that, by the exercise of ordinary care, the engine could have been stopped in time to have avoided the injury. *Purcell v. Railway,* 117 Iowa, 667; *Farrell v. Railway,* 123 Iowa, 690. As to whether the steam was escaping from these pipes when the engine ap-

1. RAILWAYS: wilful negligence.

proached, the evidence is in conflict, and therefore a finding of wilful negligence on the part of, the employes finds support in the evidence.

Nor is such a conclusion inconsistent with the answer to the seventh interrogatory, in which the jury was asked: "Was steam expelled from the steam pipes of the clipper train as the switch engine which ran over Meyer Tarashonsky approached and passed the most southerly car of the train known as the 'clipper train'?" The answer was: "Yes, about that time." The defendant's witnesses had testified that they noticed the steam when about one-half way between Seventh street and the end of the clipper train, and that the escape of the steam obstructed their view of the east track along next to the cars. The plaintiff's witnesses testified that no steam was escaping as the switch engine neared the place of collision, which, according to the answer to the sixth interrogatory, was "at a point immediately east of the cars of the passenger train known as the 'clipper train,' and north of the south end of said clipper train." The evidence shows that the collision must have occurred but a few feet north of the south steps of the end car, and plaintiff's witnesses did not testify as to whether steam was escaping when the train was one-half way to Seventh street, so that the jury's answer was not definite, and might be construed to refer to escape of the steam when the employes first saw it. An answer to the interrogatory must be conclusive against the verdict in order to warrant disregarding the latter; and, as this was not definite, we are not inclined to say that that finding is inconsistent with the conclusion that the defendant's employes observed the child's peril. If they did, the movement of the engine can only be explained on their supposition that he would get out of harm's way, which the jury might have concluded should not have been indulged, in view of the

*2. Same:*
*verdict: special interrogatory: inconsistency.*

inexperience of a child of such tender years. Moreover, if the steam had been escaping, this finding was not inconsistent with the conclusion that, owing to the position of the employes looking down from the engine, they might have seen, for the density of the steam and its location might not have been such as to obstruct their vision entirely, or even to have arrested the attention of plaintiff's witnesses, who, according to their testimony, were looking at the point where the little boy was standing in the way of the approaching engine.

II.   Even though the employes did not see the boy on the track, if he was passing along a licensed way, they were bound to keep a lookout for travelers; and if, in

3. RAILWAYS: lookout for travelers: negligence.

the exercise of ordinary diligence, they might have discovered him in time so that, by reasonable vigilance, a collision could have been obviated, the company can not escape liability. *Thomas v. Railway,* 103 Iowa, 659.

Appellant contends that the evidence was not sufficient to carry the issue as to whether there was a way by license, to the jury.   We do not concur in this view.

4. RAILROAD CROSSING: licensed way: evidence.

It is unnecessary to review the evidence in detail.   Suffice it to say that the right of way from Seventh street to a point midway between Eighth and Ninth streets is unfenced; that from there on a space one hundred feet wide and about three hundred feet long, in which the section foreman's dwelling is located, is inclosed with a fence.   The evidence tends to show the existence of a beaten path from the southeast corner of this inclosure, in a southwesterly direction, to within about thirty feet of the track, and there lost in the cinders; that there were many residences along Clark and intersecting streets, and people, adults as well as children, have customarily, for many years previous, passed by way of this path over on the tracks, and either gone south between the rails of the first track, or diago-

nally across down to Seventh street in going over to the west side, and have returned in the same way. The evidence further tended to show that this has been done with the knowledge of the employes of the company, and without their dissent. It may be that these boys had never come over this route before. That can make no difference. If they had been trespassers, and then got on the licensed way, and were traveling over it in the usual manner, they were entitled to protection while doing so.

The counsel make the point that, if the children were at play and passed on the licensed way temporarily, and not in using it for travel, they should not be treated as of the class to whom consent to the use of the way had been extended. The trouble with the argument is that the jury expressly found that the boys had not been at play on or between the tracks, and that they were returning on their way from school. Some witnesses of the defendant testified to warning children and older people from the track yards. Analysis of this evidence leads to the conclusion that, while the children and adults may have been directed to get out of the way, "to leave the yards," they were not warned against passing on their way either diagonally over the tracks or from along the first between the rails, save in one instance. Thus the witness Peters testified that, "if the children were close enough, we hollowed to them to get out the way and stay out." But he also said that he had seen them crossing the tracks, not in the way of his engine, when he paid no attention to them. The testimony of Earl Knowles indicated that the men were simply warning children to get out of the way, and as this boy said, they advised him many times to keep from between the rails, and to walk between the tracks. Another boy testified that, while hunting rubbers on the track, he was told to get away. The watchman warned them from the tracks near the watch-house. Cosgrove testified generally, and others,

to warning the children from the tracks. Others had ordered them from the track yards, apparently when loitering or playing there. The yardmaster drew the line on boys ten or twelve years of age, as he concluded that to those older warning would not be effective. As said, analysis of the evidence has convinced us that no more was done by the employes of defendant than object to the general use of its track yard by either children or adults. They do not seem to have warned them from passing the particular way involved in this action. One witness so testified, but was contradicted by the testimony of plaintiff. At most, the evidence goes no farther than to raise the issue as to whether defendant acquiesced in the use of the alleged way over its tracks. The cars were stored on the track, but it was shown that pedestrians habitually went around these when in the way, and they obviated the conclusion that the location of these cars was entirely inconsistent with the existence of a licensed way. Moreover, it does not appear that cars were stored on the second and third tracks longer than parts of each day. Surely evidence that travelers have continually passed over the tracks, without objection, during fourteen years with the showing that the yards are level and uninclosed is not conclusively overthrown by the proof adduced by the defendant. The issue was for the jury. See *Murphy v. Railway,* 38 Iowa, 542; *Clampit v. Railway,* 84 Iowa, 71; *Booth v. Railway,* 126 Iowa, 8; *Calwell v. Railway,* 138 Iowa, 32.

III. Appellant complains of the refusal to give the twelfth instruction, with reference to the storage of cars on the track, as being a circumstance inconsistent with the assent on the part of the company to travel on the particular way. This was an item of evidence to which the jury's attention might well have been directed, but the instruction requested was incorrect, for it, in effect, told the jury

5. SAME: instruc-
tion: assump-
tion of facts.

that the plaintiff was a trespasser. Had defendant cared to have this phase of the evidence expressly alluded to in the charge, a correct instruction should have been requested.

IV. Defendant requested the following instruction: "You are hereby told that it is the law that, if you find the boy, Meyer Tarashonsky, was a licensee in the yard of the defendant company, he, as such licensee, assumed the risk of all dangers which are caused by natural and proper use and operation of the tracks, and operation of the trains and switch engine of the defendant company." This was refused. It contained a correct statement of the law in the abstract. See *Davis v. Town of Bonaparte,* 137 Iowa, 196. But the instructions fully covered the proposition, though in the concrete, by treating the escape of steam as the proper and natural use of the tracks by the defendant. The court left it to the jury to say whether, in the situation as it actually occurred, there was proof that the employes of defendant, in the exercise of ordinary care, might have seen the plaintiff in time to have avoided the injury. If they did, or might by the exercise of ordinary care have seen him, then, regardless of other matters, they had no right to run him down. The instruction could only have referred to the right to throw off steam from the pipes, and to operate the engine through said steam. Without discussing whether the defendant might in all cases be excusable for not stopping before going on the licensed way, where the view is obstructed, it is enough to say that the instructions in this case proceeded on the theory that defendant had such right, and therefore is not in a situation to complain. This is sufficient response to the criticism of the court's refusal to give the twentieth instruction requested.

We are of the opinion that the evidence was sufficient to support the verdict, that the issues sufficiently defined

6. INSTRUCTION: assumption of risk by licensee.

the instructions given to the jury, and that there was no misconduct on the part of counsel for plaintiff in his argument.

The judgment is *affirmed*.