GEORGE STOTELMEYER, Appellee, v. CHICAGO, M. & ST. P. R. R. Co., Appellant.

**Evidence:** PHOTOGRAPHS: CONCLUSIVENESS.    Photographic evidence
1    must be considered in connection with all of the evidence on the subject to which it refers, and is not in itself so conclusive that the testimony of witnesses in apparent conflict must be disregarded.

**Railroads:** CROSSING ACCIDENT: CONTRIBUTORY NEGLIGENCE: EVIDENCE.
2    In this action for injury to plaintiff resulting from a collision with a train at a highway crossing, the evidence is held to require submission of the issue of the contributory negligence of plaintiff and the driver of the vehicle.

**Same:** INSTRUCTIONS.    In this action there was evidence . that the
3    plaintiff when some distance from the crossing stopped and looked for an approaching train and that when still nearer the crossing he stopped again and looked but saw no train, and it is held that an instruction to the effect that the plaintiff and the driver were required to look and listen for trains within a reasonable distance from the crossing, and when this was done and no train was seen or heard the jury must determine whether they were bound in the exercise of ordinary care to stop, look and listen at some nearer point to the crossing, was not objectionable as permitting the jury to find that although they stopped, looked and listened on the first occasion and not afterwards they were not negligent; especially as the court in a subsequent instruction cautioned the jury against such an assumption.

**Same:** INSTRUCTION.    Where it appeared that the driver of a vehicle
4    in which plaintiff was riding looked for an approaching train before driving upon the track and there was none in sight or hearing, plaintiff, though chargeable with any negligence of the driver in this regard, was not guilty of negligence because failing him-

self to look and listen for the train, but the action of the driver in so looking was a proper circumstance to go to the jury on the question of plaintiff's negligence; and the instruction submitting this question is not open to the objection that its indirect effect was to impute to plaintiff freedom from contributory negligence because of the statement therein that plaintiff was chargeable with the negligence of the driver.

**Evidence:** OBJECTION: REVIEW: HARMLESS ERROR. The discretion of the trial court in permitting leading questions will not ordinarily be interfered with on appeal: Nor will a cause ordinarily be reversed because of the reception of immaterial evidence; as the objection of immateriality is more for the protection of the court and the dispatch of business than for the benefit of litigants. In the instant case the evidence though incompetent is held to have been nonprejudicial.

*Appeal from Appanoose District Court.*—HON. C. W. VERMILLION, Judge.

SATURDAY, JULY 9, 1910.

ACTION for damages for personal injuries alleged to have been sustained in a collision at a highway crossing. There was a verdict and judgment for plaintiff. Defendant appeals.—*Affirmed.*

*F. S. Payne, J. C. Cook,* and *C. E. Broman,* for appellant.

*Howell & Elgin,* for appellee.

EVANS, J.—At the close of the evidence defendant moved for a directed verdict. This motion was denied by the trial court and error is assigned upon such ruling, and we give our first consideration to this question.

The accident involved in the inquiry occurred on February 17, 1907, at about two o'clock a. m., at a highway crossing defendant's railway between Jerome and Seymour. The plaintiff and one Linn had procured a team

and driver to take them from Jerome to Seymour. They were riding in a single-seated top buggy. The night was somewhat cold and the buggy top was up and inclosed by side curtains. The plaintiff and Linn occupied the seat proper and the driver, one Pollock, a boy sixteen years of age, sat upon their knees so that he occupied a position a little in front of them. They were driving east. The defendant's railway lay to the south of them before they reached the crossing, and extended in a general northeasterly direction. At the crossing in question the railway crossed the highway at an acute angle of about twenty degrees. For a distance of two or three hundred feet from the crossing, the grade of the highway was about six feet lower than the grade of the railway; the highway rising quite abruptly to the grade of the railway in the last twenty-five feet west of the crossing. The center line of the highway entered the right of way space of the railway, one hundred and eighty-five feet west of such crossing. That is to say, at a point one hundred and eighty-five feet west of the crossing, the center of the highway was fifty feet north of the center of the railway track. From this point the lateral approach of the highway to the railway was gradual. In the last twenty-five to fifty feet of the highway west of the crossing it was so close to the railway track that a train approaching from the southwest would come from behind a team driving east. To this extent the evidence is practically without dispute. The evidence also tended to show that along the south side of the highway there was a hedge which obstructed the view to the south, and this hedge extended east to a point about where the south line of the highway intersected the north line of the right of way. The plaintiff testified that at a point about one hundred and fifty or two hundred feet west of the crossing they stopped the team, and that he and the driver looked in both directions for a train and saw none; that this occupied about two minutes' time; that at fifty or sixty feet from the crossing

they stopped again and looked likewise and failed to see any train; that they were driving on a walk; that the road at this point was a narrow embankment twelve or fourteen feet wide, with the railway to the right of them and a ditch to the left of them which prevented any escape by turning around in case of emergency; that when they were about twenty-five feet from the crossing, the light of the approaching train suddenly streamed upon them; that the driver tried to stop his team, but it became unmanageable and rushed forward; that a collision thereby occurred which resulted in the killing of the driver and one of the horses, and in an injury to the plaintiff who was carried upon some part of the locomotive for a distance of six hundred and fifty feet.

Much testimony was introduced on behalf of plaintiff to the effect that the hedge referred to was such an obstruction to the view that a train could not be seen from the

1. EVIDENCE: photographs: conclusiveness.

highway until within a very short distance from the crossing. On the other hand, the defendant put in evidence certain photographs and plats and certain measurements tending to show that from any point two hundred and fifteen feet or less on the highway west of the crossing, a clear view could be had of the railway track for a distance of from one thousand to two thousand feet. It is argued that this evidence is conclusive, and that the court should accept it as such, and that the testimony on behalf of plaintiff should be disregarded in so far as it appears to contradict this evidence on behalf of defendant. It is upon this theory that the defendant contends for its right to a directed verdict. There are several reasons why defendant's position is not tenable. We have examined the photographs, and they do not impress us as at all conclusive in support of the defendant's theory. It is a matter of common knowledge that a photograph is not always true in its perspective and does not necessarily present distances nor angles as they are.

Nor does it always present the relative size or relation of objects at varying distances. This is illustrated by an examination of the three photographs introduced in evidence by the defendant, which present to the eye a somewhat conflicting appearance of the same topographic view. While, therefore, a photograph has its proper uses and is a great aid in arriving at the truth, it may also have its own unavoidable deceptions. It is a matter of common observation that the photographs introduced in evidence by opposite parties sometimes present as great apparent conflict as the testimony of opposing witnesses. The most, therefore, that can be said for photographic evidence is that in any given case it must be considered in the light of all the evidence, and with due regard to its natural limitations.

The measurements and plats introduced by the defendant tend to show that at a point two hundred and thirty feet west of the center of the crossing the railway track would be visible to a person on the highway for a distance not less than six hundred feet west of the crossing. This latter distance of view of the track would diminish as the distance from the crossing to the point of view on the highway was increased. It appears that the plaintiff, from any point of the highway within two hundred feet of the crossing, could have seen the train one thousand feet or more southwest of the crossing, and it is argued that he was therefore necessarily guilty of contributory negligence in failing to discover the train before reaching the point of collision. It is conceded that the train was going at a very high rate of speed, estimated by defendant's witnesses at thirty-five to forty miles an hour. It came down a descending grade, there being a fall of four feet in the one thousand, one hundred and forty feet of track next west of the crossing. Just west of the crossing there was a comparatively sharp curve in the track bearing more to the south

2. RAILROADS: crossing accident: contributory negligence: evidence.

of west. Assuming the truth of plaintiff's testimony that at fifty or sixty feet from the crossing they did stop and look and listen for a train in both directions, and that this stop occupied one minute or more, it does not follow that they must have seen the approaching train at that time. Plaintiff was required to look in both directions. The stopping and adjusting of robes and starting occupied a little time, and it was not impossible that the train could have been more than two thousand feet away at the very moment that the plaintiff or the driver looked in that direction and yet have covered the distance in time for the collision. There is the further consideration that at this point the position of the buggy was such that the occupants must look behind them, in order to locate the train. They could fail to take accurate account of the curve, and thus fail to look in exactly the right direction.

It cannot be said as a matter of law that such a mistake, if made, would be negligence. The testimony on behalf of plaintiff shows that the train approached the crossing without any signals, either of whistling or ringing the bell. It must be borne in mind also that this is not a case where the plaintiff or his driver drove upon the track. The defendant has argued this case as though it were the ordinary case of a plaintiff driving upon the track in necessary view of an oncoming train, and the authorities cited are cases of that character. In such case the power of the driver to save himself by stopping his team exists ordinarily up to the very moment that he passes upon the track, and his duty to exercise his senses of sight and hearing before he does so is imperative. In this case, the plaintiff and the driver did not come voluntarily within twenty-five feet of the crossing proper, although the lateral distance between them and the track was somewhat less. True, they were within the zone of danger in that their proximity to the track might result in the frightening of their horses by the passing train. But they had to en-

counter danger for a linear distance of nearly two hundred feet. This particular danger necessarily increased as they approached the crossing. At what particular point in such approach such danger became imminent or forbidding was a question upon which there might be a fair difference of judgment. Certain it is that for the full distance of one hundred and eighty-five feet some risk of subjecting the horses to fright had to be taken, unless a train was actually in sight when that portion of the approach was entered. Whether, therefore, under all the circumstances disclosed by the evidence, the plaintiff and the driver were free from negligence in their method of approach to such crossing, was, in our judgment, clearly a question of fact to be determined by the jury, and the trial court did not err in refusing to direct a verdict on the ground of contributory negligence.

II. Complaint is made of the fifteenth instruction given by the trial court, which is as follows: "(15) Plaintiff and said driver were required to look and listen for 3. Same: instructions. approaching trains within a reasonable distance from the crossing, and if this was done and no train was seen or heard it is for the jury to say whether they were bound in the exercise of ordinary care to stop and look and listen or to look and listen without stopping at some other point nearer to the crossing, and while negligence, if any, on the part of the defendant's employees operating said engine would not excuse plaintiff or said driver from exercising due care on their part, yet they had a right to assume that the crossing signals required by law would be given, and that an engine approaching said crossing would not be negligently operated."

It is not claimed that this instruction is not correct as an abstract statement of the law. It is claimed, however, that by applying it to the particular evidence of this case it would permit the jury to find that even though the plaintiff had stopped and looked and listened only when about

one hundred and fifty or two hundred feet from the crossing and not afterwards, that such stopping and looking and listending at such distance was sufficient showing of want of negligence. It is argued that the jury should have been instructed that under such state of facts the plaintiff was guilty of negligence as a matter of law. This argument rests upon a very strained construction of the instruction, even though it stood alone. In the light of other instructions given, the argument has no basis whatever. And this remark disposes also of the claim of conflict between the fifteenth and sixteenth instructions. The sixteenth instruction guarded the jury against the very assumption which appellant claims the jury might have adopted under instruction 15. In other words, the construction of instruction 15 adopted by appellant in argument is negatived by instruction 16, and this is the only conflict presented.

III. In a number of instructions the trial court laid upon the plaintiff the burden of proving not only that he himself was free from negligence contributing to his

4. SAME: injury, but that the driver was also free from
instruction. such negligence. In other words, the trial court instructed the jury that the negligence of the driver would be imputed to the plaintiff, if it contributed to the injury. It is argued by appellant that this was erroneous, and authorities are cited to the effect that the negligence of a driver under such circumstances can not be imputed to the plaintiff. *Nesbit v. Town of Garner,* 75 Iowa, 314; *McBride v. Des Moines,* 134 Iowa, 398; *Willfong v. O. & St. L. R. Co.,* 116 Iowa, 548; *Bailey v. Centerville,* 115 Iowa, 271. Appellant concedes that on the face of it this error only laid an undue burden upon the plaintiff, and furnishes appellant no ground of complaint. It is argued, however, that the indirect effect of this instruction was prejudicial to the defendant in that, as a matter of argument, if the negligence of the driver could

be imputed to the plaintiff, his freedom from negligence could likewise be imputed to the plaintiff, and that the defendant suffered at this point. In elaboration of this argument it is said that the court adopted this view in its fourteenth instruction, which is as follows: "(14) The exercise of ordinary care required that before they went upon said crossing plaintiff or said driver should look and listen for trains, and if they failed to do so it would constitute contributory negligence, or if they or one of them did so look and listen and there was a train then in plain sight or hearing so circumstanced or situated as to suggest a reasonable probability of danger in going upon the track or in approaching nearer thereto, then to do so would constitute contributory negligence, and in either case plaintiff could not recover."

Without passing upon the abstract correctness of this instruction, it is clear to us that it presents no ground of complaint to the appellant. This instruction dealt with contributory negligence as a question of law. Surely, if the driver looked for an approaching train and saw none, and there was none in plain sight or hearing so situated as to suggest a reasonable probability of danger in going upon the track or in approaching thereto, it can not be said as a matter of law that the plaintiff was guilty of contributory negligence in merely failing to duplicate the action of the driver. The instruction gave the plaintiff no protection against the negligence of the driver in this respect. If the driver looked and failed to see or hear when he ought to have seen or heard, then his looking and listening was not a protection to the plaintiff under this instruction. The driver was in a better position to look and listen than was the plaintiff. If the driver did look and listen and did exercise reasonable care under all circumstances, it was a proper circumstance to go to the jury on the question of plaintiff's contributory negligence. The instruction complained of went no further than this, and

we have no occasion to consider the question whether, if the driver exercised reasonable care, such care should be imputed to the plaintiff as a matter of law.

IV. During the examination of plaintiff as a witness, his counsel put to him the following questions: "Q. George, if you would have heard any train tell the jury whether or not you would have drove right up on the track or had the driver do so? A. No, sir; I would not. Q. If you had heard that whistle, would you have permitted, if you could have helped it, the driver to drive toward the track after hearing the blasts until after the train passed? A. No; I would not have had him to drive up there if I could have helped it." These questions were objected to by the defendant, and the objections were overruled. The evidence was clearly incompetent, but it is not claimed that any objection was made to it on that ground. It is stated in appellant's abstract that these questions were objected to as "leading and immaterial." It is claimed in appellee's abstract that the only objection urged was that each question was "leading." The questions were not vulnerable to the objection that they were leading, and if they had been, we would not interfere with the discretion of the trial court in permitting leading questions. Nor would we ordinarily reverse a case for an erroneous ruling in receiving evidence that was merely immaterial. The objection that proposed evidence is immaterial is intended as much for the protection of the court and its record and the dispatch of public business, as for the special benefit of the litigants as such. We think this evidence now under consideration was clearly nonprejudicial, even though the objection of incompetency had been made to it.

5. Evidence: objection: review: harmless error.

V. Other points are presented by appellant. But they are so related to the points already considered that what we have said is decisive of them all.

We find no error in the record, and the judgment of the court below must be *affirmed*.