A. L. Johnston, Appellee, v. Frederick A. Delano et al., Receivers, Appellants.

**NEGLIGENCE:** Contributory Negligence—Children—No Eyewit-
1 ness—Presumptions. An action for damages for negligently causing the death of a 13-year-old boy, with no eyewitness as to the manner in which he was conducting himself as he approached and went upon the point of danger, is aided by two presumptions, both rebuttable by the defendant, and both furnishing substantive evidence on the question of due care, viz.:
    1. That a child under the age of 14 years has not negligently contributed to his own injury.
    2. That he exercised reasonable care for his own safety.

**NEGLIGENCE:** Imputed Negligence—Children—Reliance on Adult.
2 The negligence of a man of mature years is not imputable to a 13-year-old boy riding with him. He has a right to reasonably rely on the driver's superior age, etc., without being chargeable with contributory negligence *per se*, and a jury (there being no eyewitness of the accident and the attending circumstances) may very properly find that he did so rely, even though there is no evidence of such fact.

**NEGLIGENCE:** Contributory Negligence—Children—Negligence per
3 se. Evidence reviewed, and held not to charge the deceased, a young, 13-year-old boy, with contributory negligence as a matter of law.

NEGLIGENCE:   No Eyewitness Rule—Rule Reaffirmed.   The "no
4   eyewitness" rule, as heretofore applied in this court, is reaffirmed.

RAILROADS:   Accident at Crossing—Negligence—Sufficiency of Evi-
5   dence.   Evidence reviewed, and held- to clearly present a question
for the jury as to defendants' negligence in running their train at
a high rate of speed and without proper lookout, over a semi-public
crossing.

RAILROADS:   Accident at Crossings—Semi-Public Crossing—Duty.
6   While it may not be incumbent upon a railroad company to give
the statutory signal warnings at a semi-public crossing, yet its
duty is ever present to exercise at such crossings a degree of care
proportionate to the known, or reasonably to be apprehended, peril
to be avoided.

RAILROADS:   Accident at Crossing—Statutory Signals—Semi-Public
7   Crossing.   The failure to give the statutory warning signals at a
place required by law—for instance, at a public crossing—may be
the proximate cause of a collision at a near-by place where by law
such signals are not required—for instance, at a semi-public cross-
ing.

RAILROADS:   Accident at Crossing—Lookout—Failure to Keep—
8   Negligence.   Evidence reviewed, and held to justify a finding of
negligence on the part of a train crew in not keeping a proper out-
look for persons on or about a semi-public crossing.

EVIDENCE:   Opinion Evidence—Conclusions—Non-Expert Matters.
9   Conclusion questions on non-expert matters are not allowable—for
instance, whether a certain railroad crossing was a *public* or a
*private* crossing.

DEATH:   Damages—Evidence—Occupation of Parent of Deceased
10   Child.   The nature and emoluments of the occupation of the
father of a deceased child become material and competent in an
action for the wrongful death of the child, especially when the
child's substantial participation in the father's business is shown.

TRIAL:   Instructions—Requisites and Sufficiency—Test of Prepon-
11   derance of Testimony.   It is not prejudicial error for the court to
state in an instruction that the test of "preponderance and weight
of the testimony is where you believe the truth to be after hearing
all the evidence."

APPEAL AND ERROR:   Assignment of Error—Omnibus Assignment.
12   A general, sweeping assignment that the court erred in failing to
submit to the jury five special interrogatories, presents no ques-
tion for consideration.

**TRIAL: Special Interrogatories—Attempt to Cross-Examine Jury.**
13   Special interrogatories which partake more of the nature of a cross-examination of the jury than a submission of ultimate questions of fact are properly refused.

**APPEAL AND ERROR: Exceptions—Necessity for Record.** An exception without a record upon which to base it presents nothing. So held where appellants claimed that the court allowed counsel but 15 minutes in which to prepare objections to proposed instructions.

**APPEAL AND ERROR: Harmless Error—Criticism of Counsel by Court.** The court's criticism of counsel's conduct, though counsel is acting in good faith, must be regarded as harmless, when no reference is made to counsel's client or to the merits of the controversy.

*Appeal from Shenandoah Superior Court.*—GEORGE H. CASTLE, Judge.

FRIDAY, NOVEMBER 26, 1915.

REHEARING DENIED FRIDAY, APRIL 7, 1916.

ACTION at law to recover damages to plaintiff on account of the death of his minor son. There was a verdict and judgment for plaintiff, and defendants appeal.—*Affirmed.*

*N. S. Brown,* and *Jennings & Mattox,* for appellants.

*Earl R. Ferguson* and *C. R. Barnes,* for appellee.

WEAVER, J.—The accident in which plaintiff's son lost his life is the same which we had to consider in the case of *Grafton, Admrx., v. Delano,* 175 Iowa —. We shall, therefore, not here repeat the history there recorded, save so far as may be required for the purpose of clearness.

Plaintiff conducted a meat market in the town of Blanchard, in Page County, Iowa. He had in his employ one Andrew Johnson. His son, Ralph, a boy of about 13 years of age, was also employed to some extent about the business and the home. On a morning in January, 1912, the employee, Andrew, accom-

panied by the boy, drove a team and wagon to the slaughter-
house, a short distance north of town. It was necessary to such
errand that they cross the track of the Wabash Railroad Com-
pany, and this they did by driving north on one of the streets
of the town near and parallel to the line of the railroad, to a
lane or way hereinafter more particularly described. Turning
west at the lane, they followed it across the tracks to the
slaughterhouse, and soon thereafter began their return trip
over the same route. While crossing the track, they were
struck by one of defendant's trains, Andrew being instantly
killed, and the boy dying within a few minutes of the injuries
so received. This action was later brought against the defend-
ant for damages, on the theory that the death of the lad was
caused by negligence of the defendants in operating the train.

As in the former case, the particular negligence specified
is that the defendants failed to sound the statutory alarm as
the train approached the street crossing just south of the lane
where the collision occurred, and that the train was being
operated at an excessively high rate of speed through the
station grounds and yard, without proper care to watch for or
protect the lives of those who might lawfully be using said
lane. The defendants having taken issue upon the allega-
tions of the petition, there was a jury trial and verdict and
judgment for the plaintiff.

I. Appellants argue that there is no evidence of the exer-
cise of due care by the deceased for his own safety and that
he should be charged with contributory negligence as a mat-
ter of law. The proposition that there is no
evidence of due care by the deceased is not
sustained by the record. It is in evidence
without dispute that the boy was a little less
than 13 years old, and there is, moreover, no
living witness who is able to testify as to what he did or failed
to do by way of precaution against the fatal collision. Under
the established rules of law prevailing in this state, there is
a presumed incapacity for contributory negligence in a child

1. NEGLIGENCE:
contributory
negligence:
children: no
eye-witness:
presumptions.

under the age of 14, and, to defeat a recovery for his negligent injury, such presumption must be overcome by proof that he did not exercise the care and discretion usual or to be expected in children of a similar age. *Doggett v. Chicago, B. & Q. R. Co.,* 134 Iowa 690; *Hazelrigg v. Dobbins,* 145 Iowa 495, 500; *Long v. Ottumwa R. & L. Co.,* 162 Iowa 11.

Where also, as in this case, there is no living witness who saw or knew what the deceased did or omitted to do by way of care or caution in entering upon the crossing, the law presumes that he exercised reasonable care for his own safety, and if reasonable care required him to stop or look or listen; it is presumed that he did so. *Dalton, Admrx., v. Chicago, R. I. & P. R. Co.,* 104 Iowa 26; *Lunde, Admrx., v. Cudahy,* 139 Iowa 695; *Gray, Admr., v. Chicago, R. I. & P. R. Co.,* 143 Iowa 278; *Brown, Admrx., v. West Riverside Coal Co.,* 143 Iowa 662, 673; *Stephenson, Admr., v. Sheffield Brick & Tile Co.,* 151 Iowa 371, 376; *Korab v. Chicago, R. I. & P. R. Co.,* 149 Iowa 711, 717.

It follows that, with the facts from which these presumptions arise being conceded in this case, it cannot be said that there is no evidence tending to support the allegation that deceased was in the exercise of due care. It is true that neither presumption is conclusive, and both may be rebutted by proof of facts or circumstances from which it can properly be inferred that, though a child of less than 13 years, deceased did not use the care or caution for his own safety which may reasonably be expected from one of his age, capacity and experience. But the effect of such rebuttal is rarely so apparent or so convincing as to make the question one of law, and is to be passed upon by the jury. As said by us in the *Brown* case, *supra:*

"Such proof can rarely, if ever, be made so clear and unmistakable as to enable the court to dispose of the issue thus presented as a matter of law."

This case is no exception to the rule stated. Even if it should be said that Andrew, who was driving the team, was

negligent, such negligence is not imputable to the boy, and constitutes no defense to the claim here sued upon.

It is unnecessary to consider whether, if the deceased had been of mature years, he would be justified in letting his confidence in the driver influence his own activity in looking out for danger; but we think it a safe proposi-

2. NEGLIGENCE: imputed negligence: children: reliance on adult.

tion that a boy of 13 years, who, at most, is held to no greater care than may reasonably be expected of one of his age and experience, is not to be held chargeable with negligence as a matter of law, if, when riding in a vehicle driven by a man of mature age, under the circumstances here shown, he relies to some extent upon the driver's superior age, experience and judgment. See *Stotelmeyer v. Chicago, M. & St. P. R. Co.*, 148 Iowa 278. It is not an answer to this suggestion to say that there is no testimony that he did so rely; for it is enough that, under the record as here made, the burden is upon the defendants to negative the presumption that he exercised the caution of the ordinary boy of his years, and, in the absence of evidence, it would be proper for the jury to consider that he might have been influenced by a reasonable reliance on Andrew. Upon a different state of facts, the principle here applied is approved in *Korab v. Chicago, R. I. & P. R. Co.*, 149 Iowa 718.

Further discussion upon the question of contributory negligence as a matter of law is unnecessary. It is proper, however, to add that appellants rely, in this respect, largely upon the fact that, as they say, there was a

3. NEGLIGENCE: contributory negligence: children: negligence *per se*.

space of from 2 to 8 or 10 steps immediately south of the track where, had the boy or driver looked to the south, the train would have been visible. The fact, if proved, is a pertinent one for the jury upon the question of contributory negligence, and the jury was properly instructed to give due weight to all the attendant circumstances in reaching its conclusion upon this issue. It certainly is not of itself conclusive of the boy's negligence.

He was not driving the team. If the team was moving at even a moderate speed, it would pass over the interval of 2 to 10 steps very quickly, and the time it would take him to discover the danger and warn the driver, or to arise from his seat and spring from the wagon, if he had the presence of mind so to do, may well have been sufficient to bring him upon the track and into the collision. Certainly the court cannot assume to say that this young boy, in order to relieve himself from the charge of negligence, was bound to dismount from the wagon before it reached the open space and go ahead and make an inspection; and the simple fact that, at a particular point in the route, he might have discovered the train, is not alone sufficient to take the case from the jury. *Moore v. Chicago, St. P. & K. C. R. Co.*, 102 Iowa 595; *Spencer v. Illinois Cent. R. Co.*, 29 Iowa 55; *Selensky v. Chicago, G. W. R. Co.*, 120 Iowa 113; *Correll v. B., C. R. & M. R. Co.*, 38 Iowa 120.

There was no error in the refusal of the trial court to hold the deceased chargeable with negligence as a matter of law. Some of the precedents cited by the appellants announce rules which this court has distinctly refused to follow, while the others are not inconsistent with our conclusions here announced. The law, as we interpret it, has been well settled in this jurisdiction, and a review of the authorities would be simply to repeat what we have said on numerous prior occasions.

II. Counsel have given a separate paragraph of their brief to a re-argument of the rule relating to the presumption of due care based upon the instinct of self-preservation, where no witness is able to testify of his own knowledge with reference to the conduct of the deceased person alleged to have lost his life through the negligence of the defendant. In so far as the argument is designed to secure the overruling or modification of the rule as we have applied it in prior decisions, we have only to say that we are still satisfied with its essential justice and its soundness in principle; and, in so far as our

4. NEGLIGENCE: no eyewitness rule: rule reaffirmed.

attention is directed by counsel to the limitation of the rule by which it cannot prevail where the record otherwise shows that deceased could not have exercised reasonable care, it is still to be said that the charge of the court did not overlook such limitation, nor has it been denied due consideration by us in this case.

III. Question is also raised as to the sufficiency of the evidence to sustain a finding of negligence on the part of defendants. That there was sufficient to take the case to the jury, we have no doubt. Defendant's track makes its entrance into the incorporated town of Blanchard around a curve from the east to the station, whence it continues for some distance practically to the north. Something less than a half mile north of the station, but still within yard limits, the main track and sidetrack are crossed by the course of a lane which has been used for many years as a means of access from the street on the east side of the right of way to a slaughterhouse and stock pens on the west side. Railway stock pens are also in the same neighborhood on the east side. This lane was in daily use by the plaintiff herein, who conducted a meat market in town. It was graded up to the tracks, and the tracks were planked, to facilitate the passage of teams and vehicles. The crossing was made and kept in repair by the railway company. It was used not only by the proprietor of the meat market, but also by one or more other owners of land on the west side of the track, and by farmers who took their cattle and hogs to the slaughterhouse to be butchered. The train which killed the deceased was an hour and a half late, and approached town at a rapid rate. It slowed down somewhat as it approached the station, but passed it at about 25 miles an hour, then immediately speeded up again, and approached the lane crossing at 45 miles an hour, according to the estimate of the engineer. There is a street crossing between the station and the lane, and there is evidence from which the jury could find that the statutory signals of

5. RAILROADS: accident at crossing: negligence: sufficiency of evidence.

bell and whistle for this crossing were not given. As the train passed the street crossing, the fireman says that he looked from his window along the track and, seeing no one, turned his attention to firing the engine, and did not look out of the window again until after the collision. The engineer was on the right side of the cab, commanding the window on that side, but saw no one until he caught a glimpse of the team on the crossing, almost at the instant of the crash. Though he endeavored promptly to stop the train, he did not succeed in doing so until it had passed 1,500 feet north of the lane.

All of these circumstances, except as to the failure to sound the crossing signals, are practically undisputed. They show, in the first place, that deceased and his companion were not trespassers. The construction and maintenance of the crossing by the railway company and the years of use thereof by the owners of the slaughterhouse and pens and by the other persons mentioned disclose a consent, if not an invitation, to such use; and the fact that it was what defendants call a private crossing made it none the less the duty of the company to operate its trains over it with reasonable regard to the safety of those who might be rightfully using it. The company must be presumed to have known that the crossing which it had prepared was being used by persons having occasion to pass between the public street and the property on the west side. The duty of reasonable care on the part of a railroad company in such cases includes watchfulness on the part of its servants operating trains, as they approach the crossing, to discover whether it is clear, and to avoid collision with those who may lawfully be passing over it. It may not be incumbent upon them to give the statutory alarm or warning. That we do not decide; but it is enough here to say that they cannot send their trains over such crossings at high rates of speed, endangering lives of those in use of the way so provided, and make no reasonable effort to know the condition of the crossing and to avoid the threatened injury. This

6. RAILROADS: accident at crossing: semi-public crossing: duty.

duty pertains alike to public and private and farm crossings, though the particular acts of precaution which reasonable care may require in one instance may not be required in another. The care is to be proportionate to the known, or reasonably to be apprehended, peril to be avoided. The rule has its basis in the familiar principle that each person in the exercise of a legal right must use reasonable care to avoid injury and damage to others, and it has been recognized by this court in *Ressler, Admr., v. Wabash R. Co.*, 152 Iowa 449; *Tarashonsky v. Illinois Cent. R. Co.*, 139 Iowa 709; *Clampit v. Chicago, St. P. & K. C. R. Co.*, 84 Iowa 71, and *Booth, Admrx., v. Union Terminal R. Co.*, 126 Iowa 8.

The question as to what precaution due care required in the operation of this particular train was for the jury. Even if there was no statutory duty to sound the whistle or bell for the lane crossing, such duty did exist as to the street crossing just south of that place, and, as we have seen, there was evidence from which the jury could find that the signals were not given. Such omission may be negligence with respect to the safety of persons lawfully crossing the track at another place in the same vicinity. *Sanborn v. Detroit, B. C. & A. R. Co.*, 91 Mich. 538; *Cahill v. Cincinnati, etc., R. Co.*, 92 Ky. 345; *Ward v. Chicago, B. & Q. R. Co.*, 97 Iowa 50. It is also competent evidence for the plaintiff, as bearing upon the issue of contributory negligence. *Heise v. Chicago, G. W. R. Co.*, 141 Iowa 88, 93. See, also, *Swift v. Staten Island R. T. R. Co.*, 123 N. Y. 645; *Owens v. Pennsylvania R. Co.* (Pa.), 41 Fed. 187.

7. RAILROADS: accident at crossing: statutory signals: semi-public crossing.

If, then, the jury found that the signals were not given, and drew therefrom the conclusion that due care had not been exercised, its further inference that such negligence was the proximate cause of the collision on the lane crossing cannot be said to be without support. The propriety of this result is emphasized if we assume, as we may, in support of the

8. RAILROADS: accident at crossing: lookout: failure to keep: negligence.

verdict, that the jury found that the engineer and fireman, or either of them, negligently failed to keep a proper lookout, and that such care on their part would have avoided the accident. Such a finding has ample support in the facts, even as they are shown by the appellants. It is admitted that they ran their train past the station at 25 miles an hour, and immediately, and while still in the yard and approaching the crossing, increased its speed to 45 miles an hour. While this speed was perhaps not negligent *per se*, it was within the province of the jury to find that, under all the circumstances disclosed in evidence, it showed a want of reasonable care. Appellants' contention, that the view between the crossing and the train was open and clear, is an argument which cuts both ways; for in such a case it would be an allowable conclusion of the jury that, in the exercise of their duty to look out for the crossing, the engineer and fireman could have discovered the deceased and the team in time to give an effective alarm, or to reduce the speed of the train, and thereby avoid the collision. At least we cannot say as a matter of law that the act of the fireman in withdrawing his attention from the outlook and giving it to the coaling of the engine until the mischief had been done, and the act of the engineer in keeping his gaze upon a window, which from his seat commanded only a part of the right of way, during the time when he alone was on watch, were not negligent. It is true, as counsel argue, that the duty of a fireman is of varied character, and he is not required to keep his eye glued on the right of way, but must perform his other duties also. But this does not turn the point of plaintiff's proposition that, if proper watch or lookout at those points of peculiar danger to persons who may be lawfully crossing the track had been kept, the accident would not have occurred. There is no showing that this duty might not have easily been done without interfering with due regard by both fireman and engineer to their other duties. If there was any reason why the engineer could not have refrained from speeding up the engine until he was past this crossing and out of the

station yard, or why the matter of coaling the engine could not have been delayed a matter of five or ten seconds, it is not shown in the record. It is quite apparent that neither of them at that time had any thought of this crossing as calling for any greater care on their part than the right of way generally. Without pursuing the subject any further, we hold that the court did not err in submitting to the jury the question of due care.

IV.   Error is assigned upon a ruling excluding the answer of a witness who was asked upon part of the defendants whether the crossing where the collision took place was public or private.   The ruling was correct.   The

9. EVIDENCE: opinion evidence: conclusions: non-expert matters.

question called for the witness' opinion or conclusion upon facts which were entirely undisputed.   If the question was material, it was not of a character to call for expert testimony, and the jurors were entitled to draw their own conclusions and inferences from the proved or conceded facts.   If it be thought a question of law, then it was for the court, and not the witness. Moreover, the court explicitly instructed the jury that the crossing was not a public one at which statutory signals were required, thus interpreting the issues and narrowing the range of inquiry by the jury in a manner as favorable to the defendants as could be asked upon any theory of the case.   There is no merit in the objection here considered.

V.   The evidence tended to show that plaintiff, the father of the deceased boy, was the proprietor of a meat market; that the boy assisted his father in and about the business and

10. DEATH: damages: evidence: occupation of parent of deceased child.

"took a man's place in helping in the store, in butchering and in cutting up and delivering meats." He was also described as being intelligent and in good health.   Over the objection of the defendants, plaintiff was permitted to testify that the reasonable wages of a butcher and meat cutter were $15 a week.   We think it not incompetent or immaterial. In the first place, the boy was shown to have already acquired

considerable experience in the business. He was still a minor, and there was some presumption that he would still continue in the business, at least during his minority. Even if the testimony objected to had reference to an experienced man in this kind of business, the value of the services of a man would be of some assistance in arriving at the value of the labor of a boy whose comparative age, experience and capacity have been shown. Moreover, the boy, with each passing year, would, if living, have become more experienced and efficient, and might well be earning full wages long before he was 21 years of age, and the fact as to the ordinary wages of a man in such employment was something that the jury was entitled to know.

VI. Most of the exceptions taken to the instructions in proper time and argued to this court are to the effect that the several paragraphs relating to the matter of negligence on the part of defendants ought not to have been given, because the evidence was insufficient to support a finding of any want of due care on their part. So also it is contended that all instructions upon the questions of contributory negligence are erroneous, because the plaintiff as a matter of law, failed to show due care on the part of deceased. These points have already been ruled upon contrary to appellants' contention, and need not be further considered.

11. TRIAL: instructions: requisites and sufficiency: test of preponderance of testimony.

Objection is made to the court's statement to the jury that the test of "preponderance and weight of the testimony is where you believe the truth to be after hearing all the evidence." Counsel do not state what they claim to be the error of this instruction, except that it "throws the door wide open for the jury to do what they please." The language of the court at this point is perhaps too brief and epigrammatic to be quite exact, but we fail to discover in it any prejudicial error. It in substance says to the jury that the weight and value of testimony are in proportion to its persuasive or convincing effect upon the mind of the person who gives it his

candid consideration, and this, we think, is correct. Still further, the quoted language is a sentence taken out of the body of a paragraph upon the proper consideration of evidence, and when thus segregated, does not quite fairly reflect the substance of the instruction as a whole.

VII.   The defendants asked the submission of five special interrogatories to the jury, as follows:

"Int. I.   What would Ralph Johnston have earned each year, had be lived, during the first four years

**12. APPEAL AND ERROR: assignment of error: omnibus assignment.**   after the date of his death, less the fair and probable cost of his clothing, maintenance and care and such matters, inseparably connected with his bringing up by his father?

"Int. II.   What would Ralph Johnston have earned each year, had be lived, from his 17th birthday to his 21st birthday, above the fair and probable cost of his clothing, maintenance and care and such matters as are inseparably connected with his bringing up by his father?

"Int. III.   If you find from the evidence any sum so earned by him yearly until he should arrive at 19 years of age; and, further, if you should find in any sum that he would so earn above such expenses and keep for each year from his 19th birthday to his 21st birthday, then what do you find the present value of said sum to be?

"Int. IV.   Did Ralph Johnston look and listen for an approaching train from the south at any time after entering the right of way of the Wabash railroad, up to the time the team was driven upon the crossing?

"Int. V.   Did Ralph Johnston look and listen for an approaching train from the south at any time after passing the line of telegraph poles within the right of way of said Wabash railroad, and before the team was driven upon the crossing?"

The error assigned upon the refusal of these requests is omnibus in form; that is, that the court erred in not submit-

ting the interrogatories so asked. The argument thereon is equally general and indefinite—a method of presentation which we have frequently said raises no question which we can consider. But, waiving such formal requirements, we must further say that the interrogatories were directed to matters of only incidental importance, and are more of a cross-examination of the jury than requests for findings of fact vital to the integrity and conclusiveness of the verdict.

**13. TRIAL: special interrogatories: attempt to cross-examine jury.**

There were also requests for other instructions which were denied. An examination of the record shows that, in so far as the requests set forth sound rules of law applicable to the case, they were sufficiently covered by the charge prepared by the court, and it was not error to refuse to restate them.

Accompanying the exceptions taken to the court's charge to the jury is one said to be upon a ruling which gave counsel for defendants but 15 minutes to prepare and submit their objections to the several paragraphs or instructions. Neither in the exception nor in counsel's brief are we directed to any place in the record where a limitation of that kind was imposed upon counsel, and after considerable search we have been unable to find it. An exception without a record upon which to base it presents nothing for the action of this court.

**14. APPEAL AND ERROR: exceptions: necessity for record.**

VIII. In the course of the trial, counsel for the defendants asked a witness in their behalf concerning certain physical facts in the neighborhood of the place of the accident. The trial court, apparently understanding that the matter referred to had been shown by a map already in evidence, the correctness of which neither party denied, interrupted the examination suggesting that it was unnecessary to proceed further in that line; but, counsel being insistent, the court peremptorily ordered him to stop, saying, among other things, that ''the flip remarks of counsel are resented by the

**15. APPEAL AND ERROR: harmless error: criticism of counsel by court.**

court.'' Exception was taken thereto, and it is argued that the language was uncalled for and served to materially prejudice the defense. The most which can be said of the episode is that it evidences a little acerbity of temper on the part of the court, growing out of a misunderstanding of the purpose of the questions being put by counsel, who, we have no doubt, was acting in entire good faith. Judges and counsel are human, and it is inevitable that, in the stress of a protracted and hotly contested trial, there will be at times flashes of impatience and momentary misunderstandings, where neither intends to be unjust or to trespass upon the province of the other; and sharp words are indulged in which a little reflection would have repressed; but they do not often have any effect to prejudice the rights of a litigant. We can presume no such prejudice in this case, where the language of the court of which complaint is made had no reference whatever to the defendants or to the merits of the controversy being tried. While the circumstance is to be regretted, it is not of a character to justify an order for a new trial.

In other exceptions to which some attention has been given in argument and not covered by the discussion already had, we find nothing of merit which calls for further extension of this opinion. The case appears to have been fairly tried, without prejudicial error, and the judgment below is—*Affirmed.*

Evans, C. J., Deemer and Preston, JJ., concur.